**DIVERSIFIED HUMAN RESOURCES GROUP, INC., Appellant,**

v.

**PB–KBB, INC., Appellee.**

**No. 01–83–0583–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 26, 1984.

Rehearing Denied May 24, 1984.

Brantly Harris, Houston, for appellant.

Thomas E. Lucas, John Heisler, Houston, for appellee.

Before JACK SMITH, DUGGÁN and BULLOCK, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a judgment awarding appellee $12,400, by reason of appellant's violation of the Texas Deceptive Trade Practices Act (Tex.Bus. & Com.Code Sec. 17.41 et seq.).

Appellant claims that the evidence is legally and factually insufficient to support the court's finding that it violated the Texas Deceptive Trade Practices Act. By crosspoint, appellee claims that the court erred in awarding $12,400, when it should have awarded $13,400. We affirm the court's judgment finding that appellant violated the Texas Deceptive Trade Practices Act, but reform the judgment as to the amount of appellee's damages and increase it to the sum of $13,400.

Appellant is an employment agency; appellee is an engineering firm.

In 1980, appellee placed an advertisement in a newspaper seeking to hire an engineer. In response to this advertisement, Mr. Johnson, an employee of appellant, called a representative of appellee and offered to furnish appellee a graduate engineer. As a result of the telephone conversation, appellant sent Bruce B. Bayoud to interview with appellee. Bayoud had furnished appellant a resume, which showed that he held a bachelor's degree in mechanical engineering and a master's degree in business administration from S.M.U. After interviewing Bayoud, appellee hired him as a senior engineer and paid appellant $11,400 as a fee for furnishing Bayoud. Within a short time, Bayoud's supervisors became suspicious of his qualifications because he could not do the work, and required him to sign a request for his college transcript. The transcript not only disclosed that Bayoud did not have a master's degree, but also revealed he had not completed his required number of hours and had not obtained a degree. Shortly thereafter, Bayoud resigned.

When appellant refused to return the employment fee paid by appellee, appellee sued it, claiming violations of the D.T.P.A. in these respects:

(1) for breach of an express or implied warranty (Sec. 17.50(a)(2));

(2) for an unconscionable act or course of conduct (Sec. 17.50(a)(3));

(3) for failure to disclose information (Sec. 17.50(a)(1) and Sec. 17.46(b)(23)).

The evidence shows that appellant knew that appellee wanted a graduate engineer, but appellant insisted that the custom of employment agencies was not to verify the degrees listed on an applicant's resume. The appellant asserted that it never told appellee that it had checked the veracity of Bayoud's resume.

Appellant further claimed that it guaranteed the suitability of the employee for only a thirty day period.

Appellee replied that appellant impliedly and expressly warranted that it was furnishing appellee a graduate engineer and that appellant's refusal to refund the employment fee was unconscionable conduct under the D.T.P.A., because there was a gross disparity between the value appellee received and the consideration it paid.

■ The trial court recited in its judgment that it "found that Defendant had violated the D.T.P.A., Sec. 17.41 et seq., though it did not do so knowingly, and that such violation resulted in actual damages to the plaintiff in the amount of $11,400." No separate findings of fact were filed. Therefore, we will review the evidence only to determine whether it is factually and legally sufficient to support the two conclusions made by the trial court in the judgment. If there is other disputed evidence necessary to support the judgment we will only consider that evidence in a light favorable to appellee. Neither party questions the court's finding that appellant did not knowingly violate the act, so that finding is only material if the act required a finding on that element as a prerequisite to recovery.

There is no evidence showing that appellant failed to disclose information as prohibited by Sec. 17.46(b)(23) of the Act, so we consider only whether the appellant breached an implied or express warranty as prohibited by Sec. 17.50(a)(2) of the Act, or whether appellant was guilty of any unconscionable action or course of action as prohibited by Sec. 17.50(a)(3) of the Act, as pled by appellee.

■ We are of the opinion that the evidence supports a finding that appellant breached an implied warranty, as well as a finding that appellant was guilty of unconscionable action, as defined in the Act.

Section 17.45 of the Act defines "services" as work, labor, or services purchased or leased for use ...; and "consumer" as ... an individual, partnership, or corporation, ... who seeks or acquires by purchase or lease, any goods or *services* for commercial or business use.

Section 17.50 of the Act provides that:

(a) a consumer may maintain an action where any of the following constitute a producing cause of actual damages;

(b) breach of an express or implied warranty;

A furnisher of services has been held to impliedly warrant that it would furnish such services as agreed under a contract. *First National Bank of Mercedes v. La Sara Grain Company*, 646 S.W.2d 246 (Tex.App.—Corpus Christi 1982, writ granted).

■ We are of the opinion that when appellant agreed to furnish appellee an applicant for the job as a graduate engineer, it impliedly warranted that the person furnished was a graduate engineer and that such failure to furnish a graduate engineer was a breach of its implied warranty.

Appellant urges that since it made an express 30 day warranty that Bayoud would be suitable for the job, such precluded there being an implied warranty as to Bayoud's suitability.

Appellant's claim of an express 30 day warranty arises from its Exhibit No. 3, which is a form filled out by one of its employees when an employee has been placed in a job. The form is called a "placement notification" and contains various blanks for information to be filled in including the client's address, phone number, salary, and the name of the company with which the client was placed. At the left corner of the form there is a typewritten notation "Guar. Per." with a dash beside the notation, which appellant claims was filled in with the handwritten notation "30 days." Appellant claims this means that the employee sent to a company would be guaranteed as being suitable for the job for a period of 30 days.

We reject this contention for several reasons. First, there is no evidence that a 30 day warranty was a part of the parties' agreement. Second, it appears from the evidence that this form was made for internal office use and was not supplied to appellee as part of the contract. Third, even if it were shown to have been sent to appellee, there is no showing that appellee deciphered the code and understood that this notation constituted a warranty. In this connection, the copy of the exhibit in the record is illegible and we can only assume that it states what the appellant contends is on the form.

When appellee learned that Bayoud had received no degrees from S.M.U., it promptly contacted appellant and demanded a refund on the fee of $11,400. Appellant refused to make a refund but offered to credit appellee's account.

■ From the record, it is apparent that both appellee and appellant were duped by Bayoud. Both accepted Bayoud's claim of holding degrees from S.M.U. without verification from the school. In our case, it makes no difference whose responsibility it was to verify Bayoud's claims. There was no agreement between the parties as to who, if anybody, would make such check, and there was no representation made concerning any verification. Although the appellant informed the appellee that it would send a graduate engineer, it claims that the custom in the employment agency business is not to verify the accuracy of academic claims. However, this custom was not shown to have been known by appellee or embodied in the parties' agreement; therefore, it is not competent evidence. *Fry v. Guillote*, 577 S.W.2d 346 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

■ The retention of the $11,400 fee by appellant after it learned that it had furnished an imposter to appellee constitutes an "unconscionable action" under Sec. 17.-50(a)(3) of the Act. An unconscionable action or course of action is defined in Sec. 17.45(5)(B) as one which results in a gross disparity between the value received and consideration paid in a transaction involving transfer of consideration.

In our case, appellee paid appellant $11,-400 in return for appellant furnishing appellee a graduate engineer, who in fact was far from being a graduate engineer. There is no question but that there was a gross

**638**

disparity in the amount paid and the value received.

■ As to appellant's claim that it offered to credit the appellee's account when the appellee demanded a refund, we find this offer of no consequence. When a consumer revokes an acceptance of a product or a service, the seller does not have a right to cure by repairs or replacement. *Gappelberg v. Landrum,* 666 S.W.2d 88 (1984). In the instant case, the appellant's offer of a credit would have compelled the appellee to replace Bayoud through the appellant's employment agency. This was tantamount to an offer of replacement.

Appellant's points of error are overruled.

■ We sustain appellee's crosspoint of error claiming that the court should have allowed it the sum of $2,000 in addition to its actual damages of $11,400.

Section 17.50(b)(1) of the Act provides:

a consumer prevailing in a suit ... may obtain an award for the amount of actual damages he was found to have suffered and that in addition the court *shall* award two times that portion of the actual damages that does not exceed $1,000.00. (Emphasis added).

The language of the statute is not ambiguous; thus, the damages being in excess of $1,000, appellee was entitled to actual damage plus $2,000.

That part of the judgment awarding appellee the sum of $11,400 actual damages is affirmed; the part of the judgment awarding appellee an additional $1,000 as required under Sec. 17.50(b)(1) of the Act is reformed and increased to the sum of $2,000 as required by the Act.

As modified, the judgment is affirmed.