John C. ARCHIBALD, III, Appellant,

v.

ACT III ARABIANS, et al., Appellees.

No. A14–86–325–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1987.

Rehearing Denied Nov. 12, 1987.

Kevin Dubose, Joe H. Reynolds, Houston, for appellant.

John O. Tyler, Jr., Houston, J. Bruce Bennett, Austin, for appellees.

Before J. CURTISS BROWN, C.J., and CANNON and ROBERTSON, JJ.

## OPINION

CANNON, Justice.

Appellant, John C. Archibald, III, sued Act III Arabians and its owners, appellees, for damages resulting from the death of an Arabian horse. The principal issue on appeal is whether Texas law recognizes an implied warranty of good and workmanlike performance of personal services rendered by a professional. We hold that there is no implied warranty of performance in a contract for professional services and affirm the judgment of the trial court.

In the spring of 1982, Archibald placed four newly purchased horses in the show training program at Act III Arabians, nationally famous trainers of Arabian horses located in Houston, Texas. Archibald was particularly interested that one mare, Gayle Silva Robyn, be trained in English pleasure for his teenage daughter to ride and show in national competition. From the beginning, the horse was difficult to train. Specifically, when commanded to trot, the horse would buck. On November 11, 1982, the young trainer, Sky Gray, bent on correcting the bucking habit, put Robyn through a particularly strenuous training session, described by appellees as "vigorous," and by appellant as "brutal." Testimony as to the condition of the horse at the end of the workout was contradictory. It was undisputed, however, that the riding crop was used extensively on the horse during the session and that she was tired by the exercise. Welts developed on her hindquarters. On November 14th a veterinarian treated Robyn for abrasions and swelling. Within a few days the skin on Robyn's hind quarters became dry and leatherlike and eventually sloughed off. The skin condition was beginning to improve when the horse developed founder, or laminitis, in both front and rear feet. (Founder is caused by impaired circulation of blood to the hoof.) By January 17, 1983, the founder had so incapacitated the horse that she had to be destroyed.

Archibald sued Act III and individual members of the Gray family, alleging negligence, gross negligence, and violations of the Deceptive Trade Practices Act. The DTPA claim was based upon breach of an implied warranty that the services of Act III would be performed in a competent, safe, and humane manner. Although the jury found Act III to have been negligent in its training, they failed to find that such negligence was the proximate cause of the horse's death, thus defeating Archibald's recovery under either theory of negligence. With respect to the DTPA claim, the jury found that Act III failed to train the horse in a good and workmanlike manner, that such failure was a producing cause of the death of the horse, and that the fair market

value of the horse was $75,000. However, upon motion by Act III, asserting that no implied warranties for services exist under Texas law, the trial court entered a take nothing judgment.

■ In his first point of error Archibald contends that the trial court erred in failing to enter judgment for him based upon the jury's findings because the Texas common law recognizes an implied warranty for good and workmanlike performance of services. We disagree. In its most recent rulings on the issue of implied warranty for service the Supreme Court has refused to recognize such a theory of recovery. *See Dennis v. Allison,* 698 S.W.2d 94 (Tex. 1985); *La Sara Grain Co. v. First National Bank of Mercedes,* 673 S.W.2d 558 (Tex. 1984).

Appellant's contention is primarily founded upon a line of cases distinguishable from the most recent Supreme Court decisions. *See, e.g., Humber v. Morton,* 426 S.W.2d 554 (Tex.1968); *Melody Homes Manufacturing Co. v. Barnes,* 708 S.W.2d 600 (Tex.App.—Fort Worth 1986, writ granted); *Boman v. Woodmansee,* 554 S.W.2d 33 (Tex.Civ.App.—Austin 1977, no writ); and *New Trends, Inc. v. Stafford-Lowdon Co.,* 537 S.W.2d 778 (Tex.Civ.App. —Fort Worth 1976, writ ref'd n.r.e.). Each of these cases involved a contract to perform services associated with a tangible product created by the seller: a residence, a mobile home, a swimming pool, printed matter. In each instance the contract between the parties involved a sale as well as a service. The consumers were, therefore, contracting to buy a finished product. The law of implied warranties in connection with the sale of goods is well established. Tex.Bus. & Com.Code Ann. § 2.314 (Vernon 1968).

Only one case cited by appellant involved a product not made by the seller of the services, *Diversified Human Resources Group, Inc. v. PB-KBB, Inc.,* 671 S.W.2d 634 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In *Diversified,* an employment agency refused to return a find-er's fee demanded by a dissatisfied client. When the engineer, hired through the agency, could not perform well, the employer investigated his credentials and learned that he did not have the advanced degree he was represented by the agency to have had. In one of two alternative holdings in *Diversified,* the appellate court stated that "[a] furnisher of services has been held to impliedly warrant that it would furnish such services as agreed under a contract," citing only *First National Bank of Mercedes v. La Sara Grain Co.,* 646 S.W.2d 246 (Tex.App.—Corpus Christi 1982, writ granted). The Supreme Court of Texas subsequently reversed the holding of the Corpus Christi Court of Appeals in the *La Sara* case (673 S.W.2d at 565), leaving the implied warranty theory of *Diversified* without foundation in case law.

As noted by the Supreme Court in *La Sara,* the DTPA does not create any warranties; any warranty sued upon must be established to exist outside of the act. 673 S.W.2d at 565. The Court held that not every implied promise of a party to a contract is a "warranty"; such a promise may merely be an implied term of the agreement. The Court concluded, "A mere breach of contract is not a violation of the DTPA." *La Sara,* 673 S.W.2d at 565.

A similar situation is before this court. In accepting the horse for training, Act III impliedly promised to train the horse in a good and workmanlike manner. The law of Texas afforded Archibald two alternative theories of recovery for the alleged failure of Act III to meet its contractual obligations: negligence and breach of contract. Archibald failed to plead breach of contract as a theory of recovery and failed to obtain the required jury findings to support his negligence claim. The existence of the negligence and breach of contract remedies precludes the need for the Texas courts to create an additional and independent theory of recovery. We hold that there is no implied warranty of performance in a contract for professional services.

■ As an alternative argument in his first point of error, appellant contends that

Act III waived the right to argue that there is no implied warranty by failing to raise such a defense prior to the submission of the case to the jury. Appellant's reliance upon Rule 90 of the Texas Rules of Civil Procedure to support his contention is misplaced. The waiver provisions of Rule 90 are limited to parties seeking reversal. Tex.R.Civ.P. 90. Since the law of Texas recognizes no implied warranty of service, the issues in support of that theory of recovery are immaterial. It is within the power of the trial court to disregard the findings of the jury where no legal theory supports a judgment based upon those findings. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966); *Brown v. Armstrong,* 713 S.W.2d 725, 728 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Appellant's first point of error is overruled.

Appellant's remaining points of error concern the sufficiency of the evidence to support the jury findings that Archibald signed a written agreement in which he contractually disclaimed any implied warranties and voluntarily assumed the risk of injury to the horse during training. Since our holding with respect to implied warranties is dispositive of the entire appeal, we need not address these contentions or appellees' cross-point of error.

The judgment of the trial court is affirmed.