# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10799
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2015

Lyle W. Cayce
Clerk

COX, CHANEZ, AND WILLIAMS, a General Partnership; WILLIAM COX, M.D., JAMES CHANEZ, M.D.,

      Plaintiffs - Appellants

v.

HOWROYD-WRIGHT EMPLOYMENT AGENCY, INCORPORATED, doing business as AppleOne Employment Service,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-346

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

      Plaintiffs-appellants William Cox and James Chanez are members of Cox, Chanez, and Williams, a general partnership of physicians. Cox, Chanez, and the partnership (collectively "the Medical Group") appeal the district court's judgment in favor of defendant-appellee Howroyd-Wright Employment

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Agency, Inc., known as AppleOne ("AppleOne"), following a bench trial.  We AFFIRM.

The Medical Group's longtime office manager, Rosemarie Ewton ("Ewton"), decided to retire.  Ewton was tasked with finding candidates who might replace her.  She contacted Dina Moon ("Moon"), the manager of the branch office of AppleOne, a placement staffing company.  Ewton asked Moon to provide her with a list of candidates for the Medical Group's office manager position.  Ewton told Moon that healthcare experience was beneficial but not required.  AppleOne and the Medical Group did not enter into a written contract, but AppleOne agreed to furnish candidates.  In return, AppleOne would receive a finder's fee if one of its candidates was hired.  AppleOne provided a written guarantee to the Medical Group, stating that it would fully refund the fee if the "placement did not work out for any reasons during the first 30 days of employment."  If the candidate was employed for 30 to 90 days, the Medical Group "would receive a prorated refund or a free placement to replace the employee."  If the candidate was employed from 90 days to 5 years, "AppleOne would charge the Medical Group half of its normal placement fee to replace the candidate."

Moon forwarded five resumes to Ewton, including Ginger Brown's ("Brown's").  Brown's resume listed that she had been a registered nurse ("RN").  Moon relayed this information to Ewton via e-mail.

The Medical Group interviewed four of the five candidates referred by AppleOne.  It asked for references from two candidates, including Brown.  AppleOne provided the Medical Group with four positive employment references from coworkers at her last position.  The Medical Group offered the job to Brown, and she accepted it.  Moon performed a background check on Brown and reported to Ewton that the background check had not revealed "any

records on her in the national database." The Medical Group paid AppleOne a fee of $7,275 for referring Brown.

For several months, Ewton trained and monitored Brown. Then Ewton retired and Brown took over the office manager position. Shortly thereafter, over a series of several months, Brown embezzled over $60,000 from the Medical Group. Once caught, she was terminated. She was employed for a total of six months. The Medical Group later learned that Brown had never been an RN; indeed, she did not hold a nursing degree or other undergraduate degree. The Medical Group also learned that Brown had been subject to a deferred adjudication in 2007, although it had been dismissed by the time the Medical Group hired her. AppleOne's criminal background check may have revealed this deferred adjudication if Brown had provided it with her maiden name rather than denying that she had any aliases.

The Medical Group sued AppleOne under the Texas Deceptive Trade Practices Act ("DTPA"). The Medical Group requested restitution from AppleOne in the amount of the fee paid for referring Brown, the money that Brown had embezzled, and the salary paid to Brown. The district court conducted a bench trial and found in favor of AppleOne, dismissing the Medical Group's claims with prejudice.

On appeal, the Medical Group argues that the district court erred as a matter of law, but it does not challenge the court's factual findings. First, it argues that AppleOne's misconduct was a producing cause of its injuries as a matter of law. Under the DTPA, "[a] consumer may maintain an action" if a misrepresentation or unconscionable action "constitute[s] a producing cause of economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50(a). "A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 481 (Tex. 1995). While a plaintiff

"need not establish that the harm was foreseeable," it is not enough to show that the defendant's conduct "furnished an attenuated condition that made the injury possible." *Id.* at 481–82. Thus, for example, when boys meet a man because he volunteers with their Boys Club, but the boys and their family then befriend the man outside of the club context, the club's misrepresentation that it thoroughly checks the background of its volunteers is not a producing cause of the man's later molestation of the boys outside of the club. *Id.* Or, when a church advertises a teenage boy as a babysitter and parents hire him, the church's advertisement is not the producing cause of his later molestation of their children because the parents themselves chose to hire the teenager as a babysitter. *Bryant v. S.A.S.*, 416 S.W.3d 52, 60 (Tex. App.—Houston [1st Dist.] 2013).

Here, AppleOne introduced Brown to the Medical Group. But, as the above cases demonstrate, the mere introduction of a malefactor to an injured party is not necessarily a producing cause of the later injuries. We agree with the district court that AppleOne's behavior was not the producing cause of the Medical Group's injuries. The district court found that:

> Drs. Chanez, Cox and Williams collectively made the decision on behalf of the Medical Group to hire Ginger Brown. Ms. Ewton did not make that decision. In deciding to hire Ms. Brown, Drs. Chanez, Cox and Williams relied on Ms. Brown's resume, their own interview of her, and Ms. Ewton's feedback to the doctors after her interview of Ms. Brown. In hiring Brown, no representative of the Medical Group relied on AppleOne's interview of Brown or on other information AppleOne provided.

Again, the Medical Group has not challenged this or any other factual finding on appeal. In particular, the Medical Group has not demonstrated that AppleOne's representation that Brown was an RN caused the Medical Group to hire her. Because the doctors of the Medical Group decided to hire Brown based upon their own observations, we conclude that AppleOne's conduct was

not the producing cause of the Medical Group hiring Brown and its resulting injuries. *See id.*

Second, the Medical Group argues that AppleOne's refusal to provide restitution was unconscionable. It points to a case holding that an employment agency acted unconscionably by refusing to refund a finder's fee to an employer. *Diversified Human Resources Grp., Inc. v. PB-KBB, Inc.*, 671 S.W.2d 634, 637 (Tex. App.—Houston [1st Dist.] 1984). In *PB-KBB*, the candidate presented by the agency falsely claimed that he was an engineer. *Id.* Neither the employment agency nor the employer knew that he was lying. *Id.* The employer hired the candidate, discovered that he was not an engineer, and fired him. *Id.* It sued to recover the finder's fee it had paid to the agency. *Id.* The Court of Appeals held that the agency's refusal to refund the finder's fee was unconscionable because there was a "gross disparity between the value received and consideration paid." *Id.*

This case differs from *PB-KBB* in two critical respects. First and most importantly, the definition of "unconscionable action" has since been amended to omit the "gross disparity" language on which *PB-KBB* relied. *See* Tex. Bus. & Com. Code § 17.45(5). Instead, "unconscionable action or course of action" is now defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* Here, AppleOne did not take advantage of the Medical Group or its members, given that it did not know that Brown was lying on her resume and it did not represent that it would perform a more thorough check of Brown than it did. Second, in *PB-KBB*, the employment agency provided no express, limited warranty of the candidate's suitability. *Id.* In contrast, here, AppleOne did provide just such an express, limited warranty, which allowed for a full refund for 30 days, prorated refund for 90 days, and discount on further services for five years. It was not

No. 14-10799

unconscionable for AppleOne to follow its clear-cut express warranty rather than refunding the full fee and providing restitution.[1]

Because the producing cause and unconscionability issues are dispositive, we do not reach the Medical Group's other issues. For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[1] Further, at most *PB-KBB* would support refunding the finder's fee, not restitution of Brown's salary and the embezzled funds.