

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00099-CV

_____

YATES BROTHERS MOTOR COMPANY, INC., Appellant

V.

DONNA WATSON, Appellee

On Appeal from the 170th District Court
McLennan County, Texas
Trial Court No. 2014-1758-4

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# O P I N I O N

Donna Watson sued Yates Brothers Motor Company, Inc. (Yates), for breach of contract, conversion, violations of the Texas Deceptive Trade Practices Act (DTPA), and DTPA unconscionability after Yates repossessed her motor vehicle. A McLennan County jury found all issues in Watson's favor and rendered a verdict against Yates.[1] On appeal, Yates argues that the trial court erred in failing to grant its motion for new trial because, among other things, (1) it conclusively established its breach of contract counterclaim against Watson and (2) there was no evidence to support the jury's verdict on the DTPA unconscionability claim. We conclude otherwise and affirm the trial court's judgment.

## I.    Factual and Procedural Background

On February 20, 2014, when Watson purchased a 2007 Toyota Tundra from Yates, she entered into a Motor Vehicle Installment Sales Contract and an Insurance Addendum Agreement (collectively referred to as the Contract). Watson made a $2,000.00 cash payment, financed the remaining $16,282.94 with Yates at an interest rate of 17.55%, and agreed to make payments of $210.00 every two weeks beginning on March 8, 2014.[2]

Pursuant to the terms of the Contract, Watson was required to provide written proof of her insurance, make timely payments, and inform Yates in writing of a change "in [her] address or the address where [she would] keep the motor vehicle." At trial, Yates argued that it repossessed

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Yates' finance charge for the transaction was $6,204.42.

Watson's vehicle for failing to comply with those contractual requirements. The jury disagreed and concluded that Yates' treatment of Watson constituted unconscionable conduct.

### A. Proof of Insurance

In relevant part, the Contract stated,

> <u>If I fail to give you proof that I have insurance</u>, you may buy physical damage insurance. . . .  I will pay the premium for the insurance and a finance charge at the contract rate.  If you obtain collateral protection insurance, you will mail notice to my last known address shown in your file.
>
>      . . . .
>
> If I default, you may repossess the motor vehicle from me if you do so peacefully.
>
>      . . . .
>
> If you take my motor vehicle, you will tell me how much I have to pay to get it back.
>
>      . . . .

The contract also provided,

> I must keep the collateral insured against damage or loss in the amount I owe. . . . I must keep this insurance until I have paid all that I owe under this contract.  I may obtain property insurance from anyone I want or provide proof of insurance I already have. . . .  I agree to give you proof of property insurance. . . .
>
> I also understand that I may purchase the required comprehensive and collision insurance from any insurance company licenses [sic] in Texas <u>but that it is my responsibility to provide written proof to Yates Brothers Motor Co., Inc.[,] showing that the required comprehensive and collision coverage is in effect at all times. Yates Brothers Motor Co., Inc.[,] has the right to repossess the vehicle if I do not</u> . . . provide written proof of the required insurance coverage at all times.

It is undisputed that Watson had the insurance coverage required by Yates at all times. Watson insured the vehicle on the date it was purchased through Texas Farm Bureau Mutual

3

Insurance Company, with coverage expiring on March 20, 2014. On March 5, 2014, Watson purchased insurance on the vehicle from Farmers Texas County Mutual Insurance Company (Farmers), with coverage beginning on March 10 and ending on September 10, 2014. Nevertheless, initially citing only Watson's failure to notify Yates of her insurance coverage, Yates repossessed the vehicle on Monday, April 7, 2014.

At trial, Watson informed the jury that she had given Yates' business card, which Yates provided to her when she purchased the vehicle, to Farmers so it could mail proof of insurance to Yates' address. Jeff Holder, Watson's insurance agent from Farmers, testified that proof of Watson's insurance was mailed to Yates on March 6, 2014, and that Farmers' computer records reflected that fact.[3] Watson testified that, although she did not remember who she spoke with, she called Yates on March 5 to notify it that she had a new policy with Farmers and that proof of insurance would promptly be mailed by Farmers.

According to Yates, it did not receive Watson's proof of insurance, and it repossessed Watson's vehicle. On the morning of April 8, 2017, Watson called the police after she found her only means of transportation to work missing. Although she had received no communication from Yates, the police informed her that Yates had contacted them to report that it would be towing Watson's vehicle. Shocked, Watson called Yates and spoke with Maria Jesus Fuentes, Yates' location manager. Both Watson and Fuentes stated that Fuentes said the only reason for the repossession was failure to provide proof of insurance. Fuentes testified that there was no record

---

[3]However, because Farmers' corporate office mailed the letters, Holder testified that he was personally unaware of the address used to mail proof of insurance to Yates.

4

of Watson's previous call notifying them that she had obtained the insurance.[4]  Holder testified that Watson called him on the day after the repossession and that he personally faxed proof of insurance to Yates on that day.

Even after Watson provided written proof that she had maintained insurance on the vehicle at all times, Yates failed to return her vehicle, stating that she now had to pay a $500.00 repossession fee to secure its return.[5]  It later sold Watson's vehicle.

**B.      Timely Payment**

Under the contract, Watson's bi-monthly payments were to begin on March 8, 2014.  The Contract provided that Watson would be subject to a late charge if her payment was not received within fifteen days of its due date.  Watson testified that she was current with her payments.

At trial, Yates' corporate representative, Clint Yates, agreed that Watson had made two early payments of $210.00, and had paid a total of $630.00 prior to the repossession.  Yet, both Clint and Fuentes testified that Watson failed to make a payment on Saturday, April 5, 2014, which allowed Yates to repossess the vehicle on Monday, April 7.

However, the evidence demonstrated that Watson made a total of three payments, which should have been credited on March 8, March 22, and April 5.  During cross-examination at trial, Clint admitted that Watson's third payment, made prior to the repossession, was not reflected in Yates' company records for some reason.  Clint further testified that, under company policy, Yates

---

[4]According to Fuentes, Leslie Paz was the employee at Yates responsible for verifying Watson's insurance coverage. Paz did not testify at trial.

[5]While Yates' own employee, who worked for a towing company at night, repossessed the vehicle, Yates alleged that the repossession cost $500.00.

would not have repossessed the vehicle for nonpayment until someone was behind either three payments, or $500.00, whichever came first.

**C.  Updated Address**

Although Fuentes had told Watson that the only reason for the repossession was failure to provide insurance, Yates represented at trial that it also repossessed the vehicle for Watson's failure to update her address. Watson was living with her parents at 538 Centerline at the time she purchased the vehicle. After a few days, she moved from her parent's home "two miles or less" away to 211 Western Drive. After purchasing the car, Watson called Yates to let it know of her new address so that it could mail her license plates. Yates mailed Watson's license plate to 211 Western Drive. Accordingly, the jury heard testimony that Yates had Watson's new address and had repossessed the vehicle at that address.

**D.  Yates' Conduct**

The jury heard other evidence of Yates' conduct in its dealings with Watson that likely had an impact on its verdict. The jury heard that Yates used an illegal global positioning system (GPS) tracker, which was clandestinely installed in Watson's vehicle without her knowledge, to locate Watson's vehicle and repossess it on April 7, 2014. *See* TEX. PENAL CODE ANN. § 16.06 (West 2011). At trial, it was established that Yates never notified Watson about the GPS tracker, and Yates admitted that Watson did not consent to the installation of that device in her vehicle.

Next, Watson swore that she had received no communication from Yates prior to the repossession. *See* TEX. BUS. & COM. CODE ANN. § 9.611 (West 2011). Clint testified that Yates' discovery responses admitted that it made no attempt to contact Watson prior to the repossession,

6

either by phone or by mail. Yet, Fuentes testified that she sent Watson a notice on March 28, giving Watson twenty-four hours to provide Yates with proof of insurance coverage. The letter was never produced in discovery, Yates never amended its discovery responses, and the trial court sustained an objection regarding "any talk about a coverage letter." Moreover, Watson testified that her parents still lived at 538 Centerline, that she had always received mail at that address, and that Yates had sent her no notices at that address.

Next, in spite of Yates' discovery responses, Fuentes testified that she attempted to call Watson's phone, but that the number "was no good." Watson informed the jury that her phone number had never changed and that she received no phone calls from Yates at that number. Fuentes admitted that Yates also had Watson's boyfriend's number, Watson's work phone number, and numbers of seven of Watson's other relatives or friends, but that they did not call any of those numbers in advance of the repossession.

### E.     The Jury's Findings and the Trial Court's Judgment

Watson's claims for breach of contract, conversion, and unconscionability were submitted to the jury, along with Yates' counterclaim alleging that Watson had breached the Contract by failing to (1) keep the motor vehicle insured, (2) furnish written proof of insurance to Yates, (3) make timely payments, and (4) notify Yates "of the location of the vehicle notwithstanding making payments as specified."

The trial court's charge instructed the jury:

[A] failure to comply with an agreement must be material. The circumstances to consider in determining whether a failure to comply is material include --

7

1. The extent to which the injured party will be deprived of the benefit which the party reasonably expected;

2. The extent to which the injured party can be adequately compensated for the part of that benefit of which the party will be deprived;

3. The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. The likelihood that the party failing to perform or to offer to perform will cure its failure, taking into account the circumstances including any reasonable assurances; and

5. The extent to which the behavior of the party failing to perform or offer to perform comports with the standards of good faith and fair dealing.

With these instructions in mind, the jury answered (1) that Yates failed to comply with the Contract, (2) that Watson complied with the Contract, and (3) that Yates converted Watson's property. The jury also determined that Yates knowingly engaged in an unconscionable action or practice that took advantage of Watson's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

For both the breach of contract and conversion action, the jury awarded Watson $2,210.00 in damages for the difference in the value of the benefit Watson received from the use of the truck and the amount she paid for it, and $2,809.00 for out-of-pocket expenses in the past. For unconscionable conduct, the jury awarded $7,500.00 for the difference in the value of the benefit Watson received from the use of the truck and the amount she paid for it, and $2,809.00 for out-of-pocket expenses in the past. Because it found that the unconscionable act was knowingly committed, the jury awarded $25,000.00 in additional damages.

8

The trial court's final judgment awarded Watson $2,809.00 in actual damages and remitted the jury's additional damage award to $8,427.00. The court also awarded Watson prejudgment interest and $87,000.00 in attorney's fees for trial.

## II.     The Jury's Findings Are Supported By the Evidence

Yates argues that the evidence was legally and factually insufficient to support the jury's verdict on its contract claim because Watson was required to provide written proof of insurance and Fuentes testified that the proof was not in Watson's file prior to April 7.[6] Specifically, Yates argues that the Contract includes no "language authorizing Watson to place the responsibility to provide Yates Brothers proof of insurance coverage on anyone else." Thus, Yates contends, the jury should have found that Watson breached the Contract and that Yates did not. Watson replies that she met her obligation to provide written proof of insurance because Watson's and Holder's testimony demonstrated that proof of insurance was mailed to Yates on March 6.

Yates further argues that no evidence supports the jury's verdict on unconscionability because Watson did not complain of any language in the contract that she did not understand and did not allege "that the truck was misrepresented to her to her detriment" and because a mere breach of contract cannot constitute unconscionable conduct. Watson argues that Yates engaged in unconscionable acts by wrongfully repossessing her vehicle, failing to disclose that she would

---

[6]On appeal, Yates does not argue that the vehicle was repossessed because of failure to make a payment or failure to update an address.

be liable to pay $500.00 in repossession fees even if the repossession was wrongful, and failing to disclose the illegal GPS tracker installed in her vehicle.[7]

### A.    Standard of Review

"In a legal-sufficiency review, we consider the evidence in the light most favorable to the judgment, indulging every reasonable inference in favor of the judgment." *In re S.M.R.*, No. 10-15-00093-CV, 2016 WL 7321302, at *4 (Tex. App.—Waco Dec. 14, 2016, pet. denied) (mem. op.) (citing *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam)).    "To determine whether legally-sufficient evidence supports a challenged finding of fact, we credit evidence that supports the finding if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* (citing *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "The finder of fact is the sole judge of credibility of the witnesses and the weight to be assigned to their testimony." *Id.* (citing *City of Keller*, 168 S.W.3d at 819). "The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary." *Id.* (citing *City of Keller*, 168 S.W.3d at 819). "As such, reviewing courts must assume that the finder of fact decided all credibility questions in favor of the findings, and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so." *Id.* (citing *City of Keller*, 168 S.W.3d at 819–20).

---

[7]Yates also challenged the jury's findings on Watson's contract claim, but failed to challenge the jury's verdict on Watson's conversion claim. We conclude that, given the additional damage award, Yates' breach of contract claim and Watson's unconscionability claim are the dispositive issues in this appeal.

"In addition, it is within the finder of fact's province to resolve conflicts in the evidence." *Id.* (citing *City of Keller*, 168 S.W.3d at 820). "Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings." *Id.* (citing *City of Keller*, 168 S.W.3d at 820). "Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn." *Id.* (citing *City of Keller*, 168 S.W.3d at 821). "Thus, we must assume that the finder of fact made all inferences in favor of the findings if a reasonable person could do so." *Id.* (citing *City of Keller*, 168 S.W.3d at 821). "As stated in *City of Keller*, the final test for legal sufficiency must always be 'whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.'" *Id.* (quoting *City of Keller*, 168 S.W.3d at 827). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Id.* (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996)).

"In a factual-sufficiency challenge, an appellate court must consider and weigh all of the evidence." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). "The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* (citing *Cain*, 709 S.W.2d at 176). "We may not pass upon the witnesses' credibility or substitute our judgment for that of the finder of fact, even if the evidence would support a different result." *Id.* (citing *Cain*, 709 S.W.2d at 176). "If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in

what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment." *Id*. (citing *Cain*, 709 S.W.2d at 176).

With respect to Yates' breach of contract claim, "[w]hen the party that had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought." *Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). "If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law." *Id.*

**B.    Sufficient Evidence Supports the Jury's Rejection of Yates' Breach of Contract Claim**

Because Yates had the burden of proof on its breach of contract claim, it is required to conclusively establish that Watson materially breached the Contract. Under the terms of the Contract, Watson was required to provide Yates with written proof of the insurance she had purchased from Farmers. The evidence at trial established that Watson gave Holder Yates' business card, containing Yates' business address. Holder testified that Farmers mailed the proof of insurance on March 6. However, Yates argues that, because there was testimony that Yates did not have proof of Watson's insurance in its file at the time of the repossession, it conclusively established that Watson breached her agreement to provide proof of insurance in writing. We disagree.

The Contract required Watson to provide written proof of insurance. Because there was testimony showing that Farmers mailed proof of insurance to Yates on March 6, the jury was

12

entitled to believe that Watson fulfilled her obligation to provide written proof of insurance prior to the repossession. The jury also heard that Watson's files were already inaccurate because they did not contain (1) the third payment, which should have been credited to Watson's April 5 due date, or (2) Watson's new address, even though Yates was aware of that address since Watson's license plates were mailed there. Thus, the jury could have concluded from Clint's and Fuentes' testimony that there was no proof of insurance in Watson's file because of Yates' failure to update its files.

Next, the jury was instructed that any breach of the contract by Watson was required to be material. Because it was undisputed that Watson maintained the required insurance at all times and provided written proof of the insurance on April 8, in accordance with the trial court's definition of the term "material," the jury could have concluded that Yates was not "deprived of the benefit which [it] reasonably expected" and was not in danger of "suffer[ing] forfeiture," or any other damage.[8] Thus, the jury was entitled to conclude that, even had Watson breached the contract, the breach was immaterial.

Because we cannot conclude that Yates conclusively established its contract claim, we overrule Yates' first point of error.

### C. Legally Sufficient Evidence Supports the Jury's Finding of Unconscionability

Section 17.50(a)(3) of the DTPA provides that a consumer may maintain an action where an unconscionable action or course of action is a producing cause of economic damages or mental

---

[8]To establish a breach-of-contract claim, Yates was required to show that it "suffered damages as a result of the breach." *Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 540 (Tex. App.—Waco 2008, pet. denied).

13

anguish. TEX. BUS. & COM. CODE ANN. § 17.50(a)(3) (West 2011). The DTPA defines an "unconscionable action or course of action" as "an act or practice, which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(5) (West Supp. 2017). To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of her lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)).

"Unconscionability under the DTPA is an objective standard for which scienter is irrelevant." *Id*. However, a prevailing consumer may recover in additional damages "not more than three times the amount of economic damages" if the fact-finder determines that an unconscionable action or course of action is knowingly committed. TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (West 2011).

On appeal, Yates argues that an allegation of breach of contract, without more, does not constitute an unconscionable action. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (determining that nonperformance under a contract does not give rise to a DTPA cause of action). While we agree, this is not a mere breach of contract case. In other words, the jury's finding that Watson did not materially breach the Contract only begins the inquiry, because the acts which

14

Watson claimed were unconscionable occurred outside of the Contract. We focus our attention on those acts in examining Yates' assertion that there was no evidence of unconscionability.[9]

At trial, Watson testified that she had never purchased a vehicle before entering into the Contract with Yates. The evidence demonstrated that written proof of insurance was mailed on March 6, and Watson testified that she had called Yates to inform them that she had purchased insurance with Farmers. In light of Yates' discovery responses and Watson's testimony, the jury was entitled to believe that Yates never contacted Watson prior to its repossession of her vehicle. Additionally and unbeknownst to Watson, and in violation of Texas law, Yates installed an illegal GPS tracker in Watson's vehicle, which gave it the ability to view Watson's whereabouts at any time. The GPS tracker was used to repossess the vehicle.

When Fuentes notified Watson that the sole reason for repossessing the vehicle was failure to provide written proof of insurance, Watson immediately provided such proof, demonstrating that she had maintained insurance on the vehicle at all times. Yates then informed Watson that she was required to pay a $500.00 repossession fee. After lengthy questioning, Clint explained that the repossession was carried out by Yates' own employee, who was already in possession of a tow truck because he worked for a towing company at night. The Contract failed to specify the cost of a repossession, and the jury was entitled to disbelieve Clint's and Fuentes' representations that the actual cost of the repossession, conducted by its own employee, was $500.00. Further, although Watson was current on all payments due and had provided Yates with her new address,

---

[9]An assertion that there is no evidence to support a finding raises a question of legal sufficiency. *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Yates does not challenge the factual sufficiency of the evidence to support the unconscionability finding.

15

Yates, after the fact, cited failure to make timely payment and failure to update Yates on her new address as additional reasons for the repossession.

Viewing the evidence in a light most favorable to the verdict, we conclude that legally sufficient evidence supported the jury's conclusion that, to Watson's detriment, Yates took advantage of Watson's lack of knowledge to a grossly unfair degree by (1) failing to inform her of the illegal GPS tracker, (2) charging her a repossession fee that was not specified by a dollar amount in the Contract, which the jury could have believed was not the actual cost of the repossession, (3) continuing to demand payment of the repossession fee even after it had learned that the notice of insurance had been provided,[10] and (4) adding additional reasons for the repossession after the fact. Further, the jury's finding that Yates knowingly engaged in unconscionable acts was supported by Clint's testimony that Yates installed GPS trackers in all of its vehicles and Fuentes' testimony that she told Watson that the sole reason for repossession was her failure to provide written proof of insurance.

Moreover, Clint's and Fuentes' credibility was repeatedly attacked. The jury could have also found that Yates received written proof of insurance, had simply failed to update its files with this information, just as it had failed to update Watson's file with her new address and third payment, and repossessed the vehicle by error. Thus, the jury could have determined that Yates

---

[10]Yates claims that it never received notice of insurance as required by the Contract. However, as we noted above, sufficient evidence exists in the record upon which the jury could have found that it did. Based on that finding, the jury could have then determined that Yates' insistence on payment of the repossession fee even after learning it had received notice of insurance coverage was unconscionable. *See Diversified Human Resources Grp., Inc. v. PB-KBB, Inc.*, 671 S.W.2d 634 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding that employment agency's refusal to refund $11,400.00 fee to employer who hired engineer on employment agency's recommendation was unconscionable where employer and agency both learned after the date of hiring that the employee was an imposter and had no engineering degree of any kind).

took advantage of Watson's lack of knowledge that it would charge a repossession fee even if she met her obligations under the Contract and that the vehicle was repossessed by error.

Accordingly, we find the evidence legally sufficient to support the jury's verdict on the issue of unconscionability.

## III.    Conclusion

We find that the trial court did not err in overruling Yates' motion for new trial  because (1) Yates failed to conclusively establish its breach of contract claim and (2) legally sufficient evidence supports the jury's finding of unconscionability under the DTPA.  Accordingly, we affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:      March 6, 2018
Date Decided:        March 29, 2018

Publish