

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JODI STROBACH, | § | No. 08-17-00182-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd District Court |
| WESTEX COMMUNITY CREDIT UNION, | § | of Reeves County, Texas |
| Appellee. | § | (TC # 14-03-20605-CVR) |
| | § | |

# **O P I N I O N**

Appellant Jodi Strobach ("Strobach") appeals from a summary judgment dismissing her lawsuit against WesTex Community Credit Union ("WesTex"), in which she asserted claims of breach of contract, negligence, fraud, and deceptive trade practices against her credit union. Strobach asserted that WesTex released funds from her credit union account in breach of her account agreement based on a garnishment judgment issued not against her but against her father. We reverse and remand in part and affirm in part.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### *The Underlying Lawsuit against Strobach*

In 2008, TransPecos Banks f/k/a Security State Bank of Pecos (the "Bank") sued Appellant Jodi Strobach and her father, Roger Jones, in Cause No. 08-12-19254-CVR, filed in the 143rd

District Court of Reeves County, Texas. The Bank alleged it had made a series of loans over the course of several years to Jones individually and to two corporate entities he had formed including a then-defunct corporate entity in which Strobach had served as a corporate officer. Only Roger Jones and the corporate entities were named as borrowers or guarantors on the loans on which the Bank filed its suit. After the loans went into default, the Bank filed suit against Strobach and Jones individually, and against Jones d/b/a/ Jones Farms.[1]

In April of 2010, the Bank obtained a final judgment against Jones, individually, and Jones d/b/a Jones Farms, awarding damages to the Bank totaling over $260,000 for amounts owed on two outstanding loans, together with interest and attorney's fees in the amount of $7,000 (the "April 2010 Judgment"). The April 2010 judgment was signed by Judge Bob Parks, (now deceased), of Reeves County. Because Strobach had not ever been served with citation in the proceeding, no judgment was entered against her in that proceeding. Unfortunately, however, the case-caption of the judgment retained Strobach's name as a named defendant of the suit.

### The Garnishment Judgment

In December 2011, the Bank filed a series of post-judgment applications with the trial court requesting multiple writs of garnishment against several garnishees. Not having participated in the earlier suit, the applications seeking garnishment were signed by attorney Jody D. Jenkins. Along with the original case caption, each application affirmatively asserted that the Bank had obtained "a valid, subsisting judgment" not only against Roger Jones but also against Strobach. The application included an affidavit from the Bank's attorney (Jenkins), repeating the assertion

---

[1] Another suit filed by TransPecos Bank made its way to this Court and our opinion in *TransPecos Banks v. Strobach*, 487 S.W.3d 722 (Tex. App.—El Paso 2016, no pet.) detailed the procedural history of both suits. The suits filed in the 143rd District Court of Reeves County, Texas, were identified as No. 12-10-20243-CVR and No. 08-12-19254-CVR.

2

that the Bank had obtained a judgment against both Jones and Strobach.   Significant to this appeal, one of the applications was directed to WesTex, a credit union garnishee with a member account opened by Strobach in 2008.  Although Strobach was named as the sole owner on the account agreement, Jones was named as a cosigner, or "convenient" or "authorized signer," and as discussed in more detail below, frequently deposited and withdrew funds from the account.[2]

### *The Writ of Garnishment served on WesTex*

On December 13, 2011, the trial court issued a writ of garnishment to WesTex expressly stating that, in cause number 08-12-19254-CVR of the 143rd District Court of Reeves County, the Bank had claimed an indebtedness against "Roger Jones, indv. and d/b/a Jones Farms and Jodi Strobach," and for which it had obtained a "valid and subsisting judgment" in the amount of $316,496.93, and for which it had applied for a writ of garnishment against WesTex and Roger Jones.   The writ commanded WesTex "NOT to pay to defendant any debt or to deliver to him any effect, pending further order of this court," and ordered WesTex to file an answer as the law directs.

The writ of garnishment was served on WesTex on January 3, 2012, and WesTex timely filed its answer on January 24, 2011.   In its answer, WesTex stated that it had held on deposit the amount of $118,997 in a "share account" in Strobach's name and $454.61 in two accounts in Jones' name.   WesTex asked the trial court to determine and adjudicate all claims to those funds, and to thereafter discharge it from all liability.   In addition, WesTex made a request for attorney's fees alleging it had retained a law firm to represent it in the garnishment proceedings, and that its attorney had reviewed the pleadings, orders, and writs concerning the garnishment proceeding;

---

[2] In her deposition, WesTex's branch manager, Brenda Basquette, explained that Jones' status as a "convenient signer," allowed for him to deposit and withdraw funds from the account without Strobach's permission.   However, only Strobach was considered an owner of the account pursuant to terms of the account agreement.

3

had conferences with WesTex and the Bank's counsel concerning the garnishment and the subject accounts; had prepared and filed an answer to the writ on WesTex's behalf; and had performed "other related services," in the amount of $650.

As explained in more detail below, the parties here agreed that the Bank gave WesTex notice of the garnishment proceedings but did not give notice to Strobach. Consequently, neither Strobach nor Jones entered an appearance in the garnishment proceedings. Thereafter, the attorneys for WesTex and the Bank entered an Agreed Final Judgment, signed on March 23, 2012 by Judge Bob Parks of the 143rd District Court (the "Agreed Garnishment Judgment").

In the Agreed Garnishment Judgment, the Bank represented that it had given all notices "required by the statutes and rules of the State of Texas and this Court, prior to the entry of this judgment." In turn, WesTex represented that it was "in possession of money on deposit for the benefit of the Debtor," listing the three accounts described above, and stating that it knew of no other claims to the money in those accounts. WesTex also represented that it had been required to employ an attorney to represent it in the garnishment proceeding who filed an answer on its behalf.

After finding that WesTex was entitled to $750 in attorney's fees to be paid from the garnished accounts, the trial court ruled that the Bank was entitled to recover the remaining $118,701.61 from the three accounts. Thereafter, WesTex turned over the funds to the Bank in partial satisfaction of the April 2010 Judgment.

According to Strobach, she did not find out about the garnishment proceeding until over two months later when she went to withdraw money from her account, and then discovered that her funds had been transferred. When she contacted Jones to ask him what he knew about the

4

matter, he informed her that the Bank had garnished the funds but told her not to worry as he would take care of the situation.

At the hearing on the motions for summary judgment, WesTex's attorney provided certain background information during his argument. He stated that neither Strobach nor Jones filed a direct challenge to the Agreed Garnishment Judgment. However, when the Bank filed a second lawsuit against Jones and Strobach in October of 2012, seeking to collect on other loans made by the Bank to Jones and his various entities (including the JSF Corporation of which Strobach was the president), Strobach filed a counterclaim against the Bank, alleging that it had wrongfully garnished the funds from her account with regard to the earlier garnishment proceeding. The trial court (Judge Parks) dismissed the counterclaim, without prejudice, advising Strobach that she should instead file a Bill of Review to challenge the garnishment judgment. Thereafter, following a bench trial, the trial court entered a judgment against Jones in the second lawsuit, but granted Strobach's motion for a directed verdict, finding that she could not be held personally liable on any of the loans. *TransPecos Banks v. Strobach*, 487 S.W.3d 722 (Tex. App.—El Paso 2016, no pet.). After the Bank appealed the ruling, we affirmed the trial court's judgment in Strobach's favor. *Id*.

### *The Current Lawsuit*

In the interim, on March 4, 2014, Strobach filed separate lawsuits against the Bank and WesTex, which the trial court later consolidated, alleging that both defendants had acted wrongfully with respect to the earlier garnishment proceedings on two grounds: (1) that Strobach was not a judgment-debtor in the underlying lawsuit, and (2) that she never received notice of the garnishment proceeding before funds were wrongfully taken from her account. Against WesTex,

5

Strobach brought the following four causes of action: (1) a claim for breach of contract for allegedly breaching the account agreement she had with WesTex; (2) a claim of negligence for WesTex's alleged failure to protect her account; and (3) a claim under the Texas Deceptive Trade Practices Act for engaging in misleading, deceptive, and/or unconscionable conduct; and (4) a claim for fraud. The focus of her lawsuit centered on the contention that WesTex owed her a duty—either under her member account agreement or by virtue of statutory provisions—to exercise the standard of care of a reasonably prudent credit union to first determine whether the Bank had made a valid claim to a judgment of indebtedness before entering into an Agreed Garnishment Judgment. Strobach contended that because WesTex failed to fulfill its obligations, she suffered economic damages resulting from the loss of funds from her account, as well as non-economic damages resulting from mental pain and distress which caused her to seek medical treatment and lose time from work.

In response, WesTex filed a general denial, as well as a third-party petition against the Bank, blaming the Bank for any wrongdoing in the matter, and requesting indemnity and/or contribution from the Bank in the event that the court found WesTex liable on Strobach's claims.[3]

### *WesTex's Motion for Summary Judgment*

After a period of discovery, both WesTex and the Bank filed motions for summary judgment, both of which were labeled as "traditional and no-evidence" motions, seeking dismissal of Strobach's lawsuit in its entirety. Shortly thereafter, on June 23, 2017, the trial court held a hearing on the motions. During the summary judgment proceedings, WesTex again blamed the

---

[3] Shortly thereafter, Strobach filed a motion to recuse Judge Parks from presiding over her lawsuit, on the ground that he had signed the allegedly wrongful Agreed Garnishment Judgment. Although disclaiming any wrongdoing, Judge Parks voluntarily recused himself on December 4, 2014, and Judge Jay Gibson was appointed to sit by assignment in his place.

Bank for any wrongdoing in the garnishment proceeding, arguing that it had a right to rely on the Bank's express representations that Strobach had been a judgment-debtor who had been properly served in the earlier proceeding; conversely, WesTex argued that it did not owe any duty, either by terms of the account agreement or other law, to investigate the validity of the Bank's representations. WesTex further contended that it acted in accordance with statutory provisions in releasing funds held in Strobach's account, and it was permitted to act as it did under the parties' account agreement.

At the close of the hearing, the trial court stated that it believed WesTex was an "innocent bystander," and that it was therefore granting WesTex's motion for summary judgment. However, the trial court denied the Bank's motion for summary judgment at that time. After severing the two cases and granting WesTex's notice of nonsuit with respect to its third-party claim against the Bank, the trial court issued a final judgment dismissing Strobach's claims against WesTex, and this appeal followed.

## DISCUSSION

In one issue with multiple subparts, Strobach argues that the trial court erred in granting summary judgment on each of her four causes of action asserting that she presented sufficient evidence to raise a question of fact with regard to each of her claims. For the reasons set forth below, we agree with Strobach that a question of fact remained on the issue of whether WesTex breached its contractual duty owed to her when it released her funds to the Bank, and that the trial court therefore erred in granting summary judgment in WesTex's favor on that cause of action. However, we agree with WesTex that the trial court properly granted summary judgment on Strobach's remaining three claims.

7

*Standard of Review*

On appeal, we review both no-evidence and traditional motions for summary judgment *de novo.   See Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 151 (Tex. App.—El Paso 2017, no pet.) (citing *Valence Operating Company v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005)); *see also Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).   When, as here, a party has moved for summary judgment on both no-evidence and traditional grounds, we first review the no-evidence grounds.  *See Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).   If we conclude that the trial court properly granted the no-evidence summary judgment motion, we need not address the traditional motion to the extent that it addresses the same claims.  *See Lightning Oil Co.,* 520 S.W.3d at 45 (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

No-evidence motions for summary judgment are governed by Rule166a(i) of the Texas Rules of Civil Procedure, which requires a defendant to allege that adequate time for discovery has passed and that the plaintiff still has no evidence to support one or more essential elements of a claim for which the plaintiff would bear the burden of proof at trial.  *See Stierwalt v. FFE Transp. Services, Inc.,* 499 S.W.3d 181, 194 (Tex. App.—El Paso 2016, no pet.) (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015)); TEX. R. CIV. P. 166a(i).   The motion must specifically state the elements as to which the movant contends there is no evidence.   TEX. R. CIV. P. 166a(i); *see also Timpte Industries, Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex. 2009); *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex. App.—El Paso 2013, no pet.).   The burden thereafter shifts to the non-movant to produce at least a scintilla of evidence

8

to raise a genuine issue of material fact regarding each challenged element. TEX. R. CIV. P. 166a(i); *see also Lightning Oil Co.,* 520 S.W.3d at 45; *Smith v. O'Donnell,* 288 S.W.3d 417, 424 (Tex. 2009); *Wade Oil & Gas, Inc.*, 417 S.W.3d at 540. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). The non-movant fails in its burden of creating a fact issue when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540; *see also Lozano v. Lozano*, 52 S.W.3d 141, 145 (Tex. 2001); *see also Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

A defendant may move for a traditional summary judgment at any time, with or without supporting affidavits, alleging that the plaintiff does not have evidence to support her claims. TEX. R. CIV. P. 166a. The defendant moving for traditional summary judgment bears the burden of proving there is no genuine issue of material fact as to at least one essential element of the plaintiff's cause of action, and that it is entitled to judgment as a matter of law. *Lightning Oil Co.* 520 S.W.3d at 45 (citing TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017)); *see also Amedisys, Inc. v. Kingwood Home Health Care, LLC,* 437 S.W.3d 507, 511 (Tex. 2014). If the defendant meets that initial burden, the burden then shifts to the plaintiff to raise an issue of fact as to at least one of those elements, and in order to do so, it must come forward with more than a scintilla of evidence as to that element. *Amedisys, Inc.,* 437 S.W.3d at 511; *see also Chance v. Elliot & Lillian, LLC*, 462 S.W.3d 276, 283 (Tex. App.—El Paso 2015, no pet.); *Ciguero v. Lara*, 455 S.W.3d 744, 747 (Tex. App.—El Paso 2015, no pet.). However, if the defendant does not satisfy its initial burden, the burden does not shift and the plaintiff need not respond or present any evidence. *See Amedisys, Inc.,* 437 S.W.3d at 511; *see*

9

*also State v. Ninety Thousand Two Hundred Thirty–Five Dollars and No Cents in U.S. Currency ($90,235),* 390 S.W.3d 289, 292 (Tex. 2013) (citing *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000) (per curiam)).

On appeal, whether we are reviewing the granting of a traditional or a no-evidence motion for summary judgment, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Pineda*, 535 S.W.3d at 151 (citing *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006)); *see also Lightning Oil Co.*, 520 S.W.3d at 45. We further indulge every reasonable inference in favor of the non-movant, and resolve any doubts against the motion. *Lightning Oil Co.,* 520 S.W.3d at 45 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

### *The Law on Garnishment*

"Garnishment is a statutory proceeding whereby the property, money, or credits of a debtor in the possession of another are applied to the payment of the debt." *Aycock v. EECU,* 510 S.W.3d 636, 638 (Tex. App.—El Paso 2016, no pet.) (citing *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992)); *see also Buckeye Ret. Co., LLC, Ltd. v. Bank of Am., N.A.*, 239 S.W.3d 394, 398–99 (Tex. App.—Dallas 2007, no pet.); *see generally* TEX. R. CIV. P. 657–679; TEX. CIV. PRAC. & REM. CODE ANN. §§ 63.001–.008. A garnishment proceeding involves at least three parties: (1) the plaintiff (also known as the garnishor or creditor); (2) the defendant or debtor; and (3) the garnishee. *Nat'l City Bank v. Texas Capital Bank, N.A.*, 353 S.W.3d 581, 584 (Tex. App.—Dallas 2011, no pet.); *see also Leslie Wm. Adams & Associates v. AMOCO Fed. Credit Union,* 537 S.W.3d 571, 574 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Orange*

10

*Cty. v. Ware*, 819 S.W.2d 472, 474 (Tex. 1991)). The garnishee is a third party who owes a debt to or holds property of the debtor. *Nat'l City Bank*, 353 S.W.3d at 584; *see also Aycock,* 510 S.W.3d at 638 (citing *Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Grp., P.A.*, 438 S.W.3d 190, 197 (Tex. App.—Dallas 2014, no pet.)). When an individual places funds on deposit with a bank, as in the present case, the parties' deposit agreement creates a debtor-creditor relationship between the bank and the depositor. *Sunbelt Sav., F.S.B.,* 824 S.W.2d at 558 (citing *Citizens Nat. Bank of Dallas v. Hill,* 505 S.W.2d 246, 248 (Tex. 1974); *Hudnall v. Tyler Bank and Trust Co.,* 458 S.W.2d 183, 186 (Tex. 1970)). The primary issue in a garnishment proceeding is whether the garnishee is in fact indebted to the debtor and/or has in its possession effects belonging to the debtor. *See Buckeye Ret. Co., LLC, Ltd.,* 239 S.W.3d at 398–99 (citing *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.,* 190 S.W.3d 108, 112 (Tex. App.—Houston. [1st Dist.] 2005, no pet.)); *see also Leslie Wm. Adams & Associates*, 537 S.W.3d at 575. A bank served with a writ of garnishment may rely on its deposit agreements when determining to whom it is indebted. *Sunbelt Sav., F.S.B.*, 824 S.W.2d at 557.

Garnishment proceedings in Texas are governed by Chapter 63 of the Civil Practice and Remedies Code and Rules 657 through 679 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 657–79; TEX. CIV. PRAC. & REM. CODE ANN. §§ 63.001–.008; *see also Zeecon Wireless Internet, LLC v. Am. Bank of Texas, N.A.*, 305 S.W.3d 813, 816–17 (Tex. App.—Austin 2010, no pet.) (citing *In re City of Georgetown,* 53 S.W.3d 328, 332 (Tex. 2001) (noting that the Rules of Civil Procedure have the same force and effect as statutes)). When a plaintiff has obtained a "valid, subsisting judgment" against a defendant in a lawsuit, it may file an application with the trial court, accompanied by affidavits stating the relevant facts, requesting that the court issue a writ of

11

garnishment to the garnishee who is allegedly in possession of the defendant-debtor's property. *Nat'l City Bank*, 353 S.W.3d at 584–85; *see also Aycock*, 510 S.W.3d at 638; *see generally* TEX. R. CIV. P. 658; TEX. CIV. PRAC. & REM. CODE ANN. § 63.001(3).

Once the trial court issues the writ, the judgment-debtor must be served with specified garnishment documents. *Zeecon Wireless Internet, LLC,* 305 S.W.3d at 817. Rule 663a provides that a defendant shall be served in any manner prescribed for service of citation or as provided in Rule 21a with a copy of the writ of garnishment, the application, accompanying affidavits and orders of the trial court. TEX. R. CIV. P. 663a. The Texas Supreme Court added Rule 663a in response to several prejudgment-seizure cases decided by the United States Supreme Court. The United States Supreme Court had held that statutes permitting prejudgment deprivation of a person's property without notice and an opportunity to be heard violated due process. *See Fuentes v. Shevin,* 407 U.S. 67, 96 (1972); *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 341-42 (1969). The purpose of this service requirement is to advise the judgment-debtor that the writ has issued and to provide notice of their right to contest the garnishment. *Zeecon Wireless Internet, LLC,* 305 S.W.3d at 817–18.

In addition to the judgment-debtor, the garnishee must also be served with a copy of the writ, and upon service of the writ, the garnishee has three duties. TEX. R. CIV. P. 663, 663a. First, the garnishee must freeze or impound any money in its possession belonging to the judgment-debtor. TEX. CIV. PRAC. & REM. CODE ANN. § 63.003(a). The legal effect of the writ is to bring "within the control of the court" the debt the financial institution owes to its customer, as evidenced by any credit balance in the customer's account. *Texas Commerce Bank-New Braunfels, Nat. Ass'n v. Townsend*, 786 S.W.2d 53, 55 (Tex. App.—Austin 1990, writ denied). The garnishee

12

may not deliver them to the defendant-debtor and/or to any third-party, unless and until the writ is dissolved.   TEX. CIV. PRAC. & REM. CODE ANN. § 63.003(a); TEX. R. CIV. P. 659; *see also Leslie Wm. Adams & Associates*, 537 S.W.3d at 577 n.27; *Tenet Health Sys. Hosps. Dallas, Inc.,* 438 S.W.3d at 201; *Abdullah v. State,* 211 S.W.3d 938, 942–43 (Tex. App.—Texarkana 2007, no pet.).

Second, upon receiving the writ of garnishment, the garnishee must file an answer with the trial court, under oath, in writing and signed by him, indicating whether he is in debt to the defendant or not.   TEX. R. CIV. P. 665, 666, 668.   A financial institution served with a writ of garnishment may rely on its deposit agreement in determining the party to whom it is indebted. *Sunbelt Sav., F.S.B.,* 824 S.W.2d at 557.   If the answer is not controverted, the garnishee is then discharged from further liability, and is entitled to recover the costs of the proceeding, including a reasonable compensation to be paid by the defendant/debtor.   TEX. R. CIV. P. 677.

Third, once the trial court issues a garnishment judgment, the garnishee is required to pay the garnishor in accordance with that judgment, and if the garnishee fails to release the funds, the garnishor may take steps to execute on the judgment, and, in addition, the garnishee may be found in contempt and thereafter fined or imprisoned until he delivers the assets in question.   TEX. R. CIV. P. 668, 670; *see also* 5 McDonald & Carlson Tex. Civ. Prac. §§ 31:56, 31.57 (2d. Ed.) (the failure of the garnishee to pay a garnishment judgment against it may result in levy and execution being issued against the garnishee's property to satisfy collection of the garnishment judgment).

If, during the garnishment proceedings, either the garnishee or the defendant-debtor contests the garnishment or otherwise raise a dispute regarding the title or ownership of the garnished property, the matter will then go to trial to resolve the dispute.[4]   *See* TEX. R. CIV. P.

---

[4] Ordinarily, when the defendant-debtor is the customer of a financial institution, he bears the burden of preventing or limiting the institution from complying with or responding to a claim against its account, by seeking an appropriate

13

668, 674 (where garnishee's answer is controverted, the issue shall be tried as in other cases); *Nat'l City Bank,* 353 S.W.3d at 584–85 (citing *Buckeye Ret. Co.,* 239 S.W.3d at 399; *Putman & Putman, Inc. v. Capitol Warehouse, Inc.,* 775 S.W.2d 460, 463 (Tex. App.—Austin 1989, writ denied)); *see also Aycock,* 510 S.W.3d at 638. Regardless of whether or not a trial is held, if the trial court finds that the garnishee has funds or property belonging to the debtor, the court shall "render judgment for the plaintiff against the garnishee for the amount so admitted or found to be due to the defendant from the garnishee, . . . together with interest and costs[.]" TEX. R. CIV. P. 668; *see also Aycock,* 510 S.W.3d at 638–39.

### *The Requirement of Strict Compliance*

As this Court has previously recognized, the "remedy of garnishment is summary and harsh, and should not be sustained unless there is strict compliance with the statutory requirements." *Aycock,* 510 S.W.3d at 638 (citing *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.—Dallas 2005, orig. proceeding)); *see also Abdullah*, 211 S.W.3d at 942–43 (because garnishment is an extraordinary remedy, a party seeking the writ must strictly comply with statutory requirements). The failure to substantially comply with the applicable statutes and rules renders any garnishment judgment, other than one dissolving a writ of garnishment, void. *Zeecon Wireless Internet, LLC,* 305 S.W.3d at 818 (citing *Merrill, Lynch, Pierce, Fenner & Smith v. Allied Bank,* 704 S.W.2d 919, 920 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)); *see also Parker–Morgan Lumber Co. v. Parrish,* 291 S.W. 266, 267 (Tex. App.—Beaumont 1927, no writ)).

---

remedy, including a restraining order, injunction, protective order, or other remedy, to prevent or suspend the financial institution's response to the claim. TEX. FIN. CODE ANN. § 59.008. As discussed in more detail below, however, since Strobach was never given notice of the garnishment proceedings, she had no opportunity to take any such preventive measures.

In particular, the failure to give proper notice of the garnishment proceedings to the defendant-debtor, as required by law, is not considered a mere irregularity, as it is an integral part of the statutory requirements in a garnishment proceeding; therefore, a garnishment judgment rendered without such notice is void. *See Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 86-87 (1988) (declaring a Texas state court default judgment without service of citation and process a void judgment); *see also Zeecon Wireless Internet, LLC*, 305 S.W.3d at 817–18; *Walnut Equip. Leasing Co. v. J-V Dirt & Loam, a Div. of J-V Marble Mfg., Inc.,* 907 S.W.2d 912, 915 (Tex. App.—Austin 1995, writ denied); *In re Tasty Moments, LLC,* No. 13-10-00274-CV, 2011 WL 1204093, at \*6 (Tex. App.—Corpus Christi Mar. 31, 2011, no pet.) (mem. op.). In addition, as this Court has recognized, a garnishment is also considered wrongful if the facts set forth in the garnishor's affidavit are untrue. *See Chandler v. Cashway Bldg. Materials, Inc.,* 584 S.W.2d 950, 952 (Tex. App.—El Paso 1979, no writ); *see also Petroleum Workers Union of the Republic of Mexico v. Gomez,* 503 S.W.3d 9, 38 (Tex. App.—Houston [14th Dist.] 2016, no pet.)*; Jamison v. Nat'l Loan Inv'rs, L.P.*, 4 S.W.3d 465, 468 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see generally* § 9.20 Wrongful Garnishment, 15 Tex. Prac., Texas Foreclosure Law & Prac. § 9.20; 5 McDonald & Carlson Tex. Civ. Prac. § 31:62 (2d. ed.). Damages for a wrongful garnishment include recovery of the improperly garnished funds; however, other damages may also be recoverable for wrongful garnishment if they are the direct result of being denied access to the garnished funds. *Ramsey v. Davis*, 261 S.W.3d 811, 816 (Tex. App.—Dallas 2008, pet. denied) (citing *Beutel v. Paul,* 741 S.W.2d 510, 513 (Tex. App.—Houston [14th Dist.] 1987, no writ); *Aetna Casualty & Sur. Co. v. Raposa,* 560 S.W.2d 106, 111 (Tex. App.—Fort Worth 1977, writ dism'd by agr.)).

### *WesTex did not Violate any Duty It Owed Under the Statutory Scheme*

As explained above, both WesTex and Strobach agree that Strobach was not a judgment-debtor in the underlying proceeding, and that she did not receive notice of the garnishment proceeding as required by applicable garnishment laws. Thus, for purposes of this appeal only, we will assume that the Bank made false representations to both the garnishee and the trial court during the garnishment proceeding on those two issues. And as a corollary thereto, we also determine that, as to Strobach, the garnishment judgment was void as a matter of law. *See Peralta*, 485 U.S. at 86-87; *see also Zeecon Wireless Internet, LLC*, 305 S.W.3d at 817–18; *Walnut Equip. Leasing Co.*, 907 S.W.2d at 915.

In addition, we agree with WesTex that the statutory scheme for garnishment, as set forth above, did not impose a duty on it to independently investigate or review the underlying proceedings to determine the validity of the writ of garnishment or to ensure that Strobach received notice of the proceedings. "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *See generally Pagayon v. Exxon Mobil Corp.,* 536 S.W.3d 499, 503 (Tex. 2017) (citing *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990)); *see also Aguilar v. Morales*, 545 S.W.3d 670, 680 (Tex. App.—El Paso 2017, pet. denied). In the present case, we conclude that WesTex owed no duty under the statutory scheme to engage in an independent investigation or conduct a review of the underlying proceedings. *Sunbelt Sav., F.S.B.,* 824 S.W.2d at 558 ("Requiring a garnishee bank to determine true ownership of its deposits improperly shifts a judicial responsibility to the garnishee."). Instead, as explained above, the statutory scheme placed the obligation on the Bank, as the garnishor, to properly represent that it had a valid subsisting judgment against Strobach, and to

strictly comply with citation and notice requirements of the garnishment proceedings. *See, e.g.,*
*Nat'l City Bank*, 353 S.W.3d at 584–85; *see also Aycock*, 510 S.W.3d at 638; *see generally* TEX.
R. CIV. P. 658, 663, 663a; TEX. CIV. PRAC. & REM. CODE ANN. § 63.001(3). Because a garnishee,
such as WesTex, is not typically a party to the underlying lawsuit, and has no interest in those
proceedings, it typically has no basis for knowing the details with regard to the validity of the
underlying judgment, and therefore, the statutory scheme does not impose a duty on it to resolve
any questions regarding the validity of the underlying judgment. *See Cohen,* 597 S.W.2d at 452
(garnishee who was not a party to the underlying proceeding is under no duty to investigate those
proceedings) (citing *Carlton v. Hoff,* 292 S.W. 642, 647 (Tex. App.—Eastland 1927, no writ);
*Patterson v. Seeton*, 19 Tex. Civ. App. 430, 47 S.W. 732, 733 (1898, writ ref'd)); *see generally* 38
C.J.S. Garnishment § 235 (a garnishee was not required to investigate the regularity or legality of
the underlying proceedings). The statutory framework imposes the duty of service on the
garnishor to ensure that a judgment-debtor receives proper notice of the garnishment proceedings.
*See, e.g., Zeecon Wireless Internet, LLC,* 305 S.W.3d at 817–18 (citing TEX. R. CIV. P. 663a;
*Walnut Equip. Leasing Co.,* 907 S.W.2d at 914; *Hering v. Norbanco Austin I, Ltd.,* 735 S.W.2d
638, 639 (Tex. App.—Austin 1987, writ denied)); *Abdullah,* 211 S.W.3d at 943; *see also*
*Westerman v. Comerica Bank-Texas*, 928 S.W.2d 679, 682–83 (Tex. App.—San Antonio 1996,
writ denied) (citing *Hering,* 735 S.W.2d at 641–42) (recognizing that any cause of action for
wrongful garnishment based on the failure to properly serve the debtor would be against the
garnishor, and not the garnishee).

Nevertheless, as Strobach points out, if a garnishee has information in its possession that a
garnishment proceeding is not applicable to one of its account holders, this knowledge triggers a

general duty on its part to raise a defense against the garnishment.  *See, e.g., JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II,* 508 S.W.3d 391, 425 (Tex. App.—Fort Worth 2014, no pet.) (garnishee bank breached the duty to its customer to defend against a writ of garnishment that did not name its customer as a judgment-debtor, where it had actual knowledge that its customer was not the named judgment-debtor in the underlying suit, but released the funds anyway); *Sw. Bank & Trust Co. v. Calmark Asset Management, Inc.,* 694 S.W.2d 199, 200–01 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (holding garnishee bank liable for releasing funds when garnishee knew that funds in garnished account were held in trust for another and did not belong to debtor). Similarly, a garnishee can be held liable if there is evidence that it colluded with a garnishor in obtaining a wrongful garnishment judgment.  *See Cohen,* 597 S.W.2d at 452 (recognizing that a garnishee may be held liable for conversion if it knowingly colludes with the garnishor in obtaining a wrongful garnishment).

Strobach contends that the summary judgment evidence in her case created a fact question regarding whether WesTex either knew that the garnishment was wrongful and/or intentionally colluded with the Bank in obtaining the wrongful garnishment judgment.  Although her argument is not entirely clear, Strobach apparently finds evidence of collusion from the fact that:  (1) when WesTex first received the writ of garnishment, it issued a cashier's check written out to the Bank in the amount of the funds contained in her account before a final garnishment judgment had issued, and (2) WesTex thereafter entered into an Agreed Garnishment Judgment with the Bank to allow the garnishment of her account to take place, again without conducting any independent investigation to determine the validity of the proceedings.  We conclude, however, that this evidence alone does not sufficiently give rise to an inference of collusion.

18

As set forth above, WesTex was presented with a facially-valid writ of garnishment issued by the trial court, which, by all appearances, complied with the statutory requirements, and which was supported by sworn statements by the Bank's attorney to the effect that the Bank had a valid judgment against Strobach. The statutory framework thereafter required WesTex to obey that writ by taking control of Strobach's assets, pending further order of the trial court. WesTex chose to take control of Strobach's account by issuing a cashier's check made payable to the Bank in the amount found in her share account. However, there is nothing in the record to suggest that WesTex delivered the check to the Bank at a time prior to the conclusion of the garnishment proceeding as evidenced by a final judgment. This record establishes that WesTex drafted the check simply as a means of impounding the funds in Strobach's account in accordance with its statutory duties. We therefore fail to see how this evidence, without more, would establish any collusion or wrongdoing on WesTex's behalf pertaining to the wrongful garnishment.

As set forth above, the Bank represented to both WesTex and the trial court that it had a valid judgment against Strobach. We see nothing in our record that would suggest that WesTex knew or should have known that the Bank, or its representative, had made false representations; instead, we believe that WesTex was justified in relying on those representations. *See generally U.S. Gov't v. Marks,* 949 S.W.2d 320, 327 (Tex. 1997) (recognizing that reliance on an attorney's statements is justified by Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct, which forbids a lawyer from making a false statement of material fact to a tribunal (citing Tex. Disciplinary R. Prof'l Conduct 3.03)). As such, we see no evidence in the record that WesTex colluded with the Bank in obtaining the wrongful garnishment, or that it otherwise knew or should have known that that the Bank was engaging in any wrongful conduct.

19

Although we have concluded that WesTex did not owe a duty under the statutory scheme, we next consider whether WesTex owed Strobach a duty under either the parties' account agreement and/or under common law principles.

## 1. THE BREACH OF CONTRACT CLAIM

We start with a review of Strobach's breach of contract claim. The four elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance, or tendered performance, by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *See Restrepo v. All. Riggers & Constructors, Ltd.,* 538 S.W.3d 724, 740 (Tex. App.—El Paso 2017, no pet.); *see also Walker v. Presidium, Inc.,* 296 S.W.3d 687, 693 (Tex. App.—El Paso 2009, no pet.). In the present case, the parties agree that the account agreement constituted a valid contract, and there is no dispute over whether Strobach properly tendered her performance. Further, WesTex concedes Strobach's argument that the account agreement imposed on it a duty to exercise "ordinary care" in the handling of Strobach's funds. *See generally In re L & D Interests, Inc.,* 350 B.R. 391, 401 (Bankr. S.D. Tex. 2006) (citing *American Airlines Employees Federal Credit Union v. Martin,* 29 S.W.3d 86 (Tex. 2000) (recognizing that a bank generally owes a duty to exercise ordinary care in paying items from the customer's account).

The parties dispute whether WesTex breached its duty of ordinary care owed to Strobach pursuant to the terms of the account agreement. In resolving this issue, we first note that in general, the relationship between a bank (or credit union) and its customer is governed, at least in part, by agreements between the parties.[5] *See, e.g., LaSara Grain Co. v. First National Bank of*

---

[5] The Uniform Commercial Code (the UCC) also regulates a bank's relationship with its Texas customers, and imposes a duty of ordinary care on a bank with regard to various situations, such as bank transfers and the handling

*Mercedes,* 673 S.W.2d 558, 564 (Tex. 1984) (a bank impliedly agrees to disburse funds only in accordance with the depositor's instructions); *see also Am. Airlines Employees Fed. Credit Union v. Martin,* 29 S.W.3d 86, 96 (Tex. 2000) (when account owner opened his credit union account, he signed a membership application, which established a contract between banking institution and customer); *Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 133 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (recognizing that the relationship between a bank and its customers is governed in part by agreements between the two parties); *see also In re L & D Interests, Inc.,* 350 B.R. at 401. Therefore, in determining whether WesTex breached duties owed under the account agreement, we must consider what the parties intended by their agreement.

In a broad form negligence instruction to a jury, "ordinary care" is defined as the degree of care that would have been used by a person, or a business entity, of ordinary prudence under the same or similar circumstances. *See, e.g., Mattingly v. Swisher Int'l, Inc*., No. 03-17-00510-CV, 2018 WL 454787, at *3 (Tex. App.—Austin Jan. 11, 2018, pet. denied) (mem. op.); *see also* § 22:3. Jury instructions, 16 Tex. Prac., West's Texas Elements of an Action § 22:3 ("'ORDINARY CARE' means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances"); *Texas Dept. of Transp. v. Mackey*, 345 S.W.3d 760, 763 (Tex. App.—El Paso 2011, pet. denied) (approving jury instruction defining "ordinary care" as meaning "that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances." In addition, the Texas Business and Commercial Code provides that, "'Ordinary

---

of negotiable instruments. *See Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n,* 462 S.W.3d 128, 133 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing Tex. Bus. & Com. Code Ann. §§ 3.101–605 (negotiable instruments); *id.* §§ 4.101–.504 (bank deposits and collections), *id.* §§ 4A.101–.507 (funds transfers); *Bank of Tex. v. VR Elec., Inc.,* 276 S.W.3d 671, 683 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (observing that the UCC creates "a discrete fault scheme, specifically allocating responsibility among parties to a banking relationship")). The present case does not present any issues that come within the purview of the UCC.

care' in the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." TEX. BUS. & COM. CODE ANN. § 3.103(a)(9).

To this end, Texas courts have consistently held that the concept of ordinary care is an elastic one and the ordinary care to be applied depends on the circumstances of each case. *Prather v. Brandt,* 981 S.W.2d 801, 811 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). For this reason, the question of whether a defendant acted with or fell below the standard of ordinary care is usually a question of fact for the jury. *See also Exch. Bank & Tr. Co. v. Kidwell Const. Co*., 463 S.W.2d 465, 470–71 (Tex. App.—Tyler 1971), *writ ref'd n.r.e.*, 472 S.W.2d 117 (Tex. 1971) (it was within the province of the trier of the fact to determine whether Bank exercised ordinary care by failing to accurately check all signatures on checks that were written on customer's account).

In her petition, as well as on appeal, Strobach contends that WesTex's duty to exercise ordinary care included the duty to protect her account and to only release funds in accordance with the terms of the agreement; Strobach contends that a factual question exists on the issue of whether WesTex exercised such care by releasing the funds in her account to the Bank without her permission, and without first determining whether the Bank was in fact entitled to those funds. More specifically, Strobach contends that WesTex had a duty to read the judgment in the underlying case to determine if she was in fact a judgment-debtor in that case, pointing out that even a quick and cursory review of the underlying judgment would have revealed that the Bank had falsely represented her status as such. Strobach also contends that WesTex had a duty to review the record of the garnishment proceedings to determine whether Strobach had in fact

22

received notice of the garnishment proceedings, as represented by the Bank, again asserting that even a quick and cursory review of the record would have revealed that she did not in fact receive notice. Strobach contends that if WesTex had fulfilled these two duties, it would have quickly realized that the trial court lacked jurisdiction over her to issue a judgment, which in turn triggered a duty to defend her account against a wrongful garnishment. Strobach points out that the summary judgment evidence revealed that WesTex did not conduct any such investigation to determine the validity of the Bank's representations, and that this constitutes at least a scintilla of evidence that WesTex was negligent in fulfilling its duties to her.

WesTex counters that it did not breach its duty of ordinary care given how the term was defined in the account agreement. WesTex points out that the account agreement itself stated that WesTex was deemed to have exercised ordinary care if its actions or non-actions were consistent with applicable state law, regulations, and financial institution practices. As well, the account agreement states that although WesTex could be held liable for violating the terms of the parties' agreement, it was relieved of liability when acting in a manner as provided by law, and that it could not be held liable for any losses resulting from the fact that her account was subject to legal process or other claim. And finally, the agreement states that if any legal action was brought against Strobach's account, WesTex was entitled to "pay out funds according to the terms of the action or refuse any payout until the dispute is resolved." WesTex contends that we should find that it exercised ordinary care under the above-described terms, as a matter of law, contending that it dispersed the funds in Strobach's account in response to the "legal action" brought against Strobach's account, and that it did so in accordance with state garnishment law, again pointing out that the statutory scheme did not require it to conduct any independent investigation into the

23

validity of the underlying judgment.

Strobach concedes that the account agreement allowed WesTex to have honored a *valid* garnishment judgment in accordance with the parties' agreement, but contends that a question of fact exists on the issue of whether WesTex failed to exercise ordinary care when it entered into the Agreed Garnishment Judgment without first taking steps to ensure the validity of the writ of garnishment and the processes that were followed, characterizing the proceeding as a "patently wrongful garnishment upon a patently false affidavit upon a consent judgment containing patently false material representations to the trial judge[.]" We agree that a question of fact exists on the issue of whether WesTex exercised ordinary care under the terms of the parties' agreement, when it entered into the Agreed Garnishment Judgment and dispersed the funds in Strobach's account to the Bank without first verifying whether the Bank was entitled to those funds.

As explained above, the Agreed Garnishment Judgment was a void judgment, as it was based on an application for a writ of garnishment that erroneously named Strobach as a judgment-debtor, and was based on a misrepresentation that Strobach had received proper notice. It is well-established that a "void judgment is an absolute nullity and has no legal force or effect," *see, e.g., Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 636 (Tex. App.—Waco 2003, no pet.) (citing *In re Sensitive Care, Inc.,* 28 S.W.3d 35, 39 (Tex. App.—Ft. Worth 2000, no pet.); *Easterline v. Bean,* 121 Tex. 327, 49 S.W.2d 427, 429 (1932)) and that a void judgment should therefore be treated as if it never came into being. *See In re J.J.,* 394 S.W.3d 76, 80 (Tex. App.—El Paso 2012, no pet.) (a void judgment is in fact a nullity with "no binding force or effect"). *Watson v. Hart,* 871 S.W.2d 914, 920 (Tex. App.—Austin 1994, no writ) (finding that void order is "without legal vitality or effect") (citing *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674 (1942)).

24

As the underlying Garnishment Judgment herein was void as a matter of law with respect to Strobach, it had no legal effect. Therefore, it must be treated as if it never existed. As such, we conclude that WesTex was not entitled to hide behind that void judgment in an attempt to absolve itself from liability, particularly since WesTex did not simply accede to the judgment, but rather, agreed to it before it was issued.

Further, we note that the summary judgment evidence presented in the trial court supported an inference that the writ of garnishment itself put WesTex on notice that there might be an issue with regard to whether Strobach was in fact a judgment-debtor. Specifically, as set forth above, the writ of garnishment provided conflicting information regarding whether or not Strobach was in fact a judgment-debtor, or whether the judgment had only been rendered against Jones, stating that the Bank had represented that it had a valid judgment against Jones and Strobach, but then later stated that the application for a writ of garnishment was only against WesTex and Jones, and later referring to the "defendant" in the singular. We note that this language on the face of the writ conflicted with the application itself, which clearly stated that the application was against both Jones and Strobach, and is also in conflict with the Bank's affidavit, stating that the Bank had a valid and subsisting judgment against both Jones and Strobach. On this record, we conclude that a question of fact exists on the issue of whether these facial discrepancies would have put a reasonable garnishee on notice to exercise ordinary care to protect account funds and consider whether Strobach was properly named as a judgment-debtor.

Therefore, based on the above, we conclude that a question of fact exists on the issue of whether WesTex exercised ordinary care, as required by the terms of the account agreement, before it released the funds in Strobach's account to the Bank.

*A Question of Fact Remains Regarding the Ownership of the Garnished Funds*

WesTex also contends that, even if it failed to exercise ordinary care in releasing the funds held in Strobach's account to the Bank, Strobach was not damaged thereby, as the summary judgment evidence established that the funds in Strobach's account did not belong to her and instead belonged to her father. In particular, WesTex contends that the undisputed summary judgment evidence, including Strobach's own deposition testimony, established that Jones made virtually all of the deposits into Strobach's account, depositing his paychecks, social security checks, and income from his various businesses into the account, and withdrawing funds from the account as well, while Strobach herself rarely used the account; in effect, WesTex argues that Jones treated the account as his own, and suggests that Jones was apparently using Strobach's account as a means of sheltering his asserts from his creditors. WesTex contends that this evidence established that Jones had "equitable" title to the account, rendering him the true owner of the account, and rendering Strobach a "nominal" owner. *See generally In re IFS Fin. Corp.,* 669 F.3d 255, 262 (5th Cir. 2012) (recognizing that in determining the proper owner of funds deposited into a bank account, "Texas law counsels that the legal titleholder to a bank account is not always the owner of its contents.") (citing *Silsbee State Bank v. French Mkt. Grocery Co.,* 132 S.W. 465, 466 (1910)); *see also RepublicBank Dallas v. Nat'l Bank of Daingerfield,* 705 S.W.2d 310, 311 (Tex. App.—Texarkana 1986, no writ) (holding that equitable title to funds held on deposit in a bank account prevails over bare legal title to the funds).

WesTex also points out that Texas law allows a judgment-creditor to garnish an account that is in the name of a third-party, even if the third-party is not a judgment-debtor, if the debtor is the true and/or equitable owner of the account. *See, e.g., Sunbelt Sav., F.S.B*, 824 S.W.2d at 558

26

(citing *Thompson v. Fulton Bag & Cotton Mills*, 286 S.W.2d 411, 414 (Tex. 1956) ("the scope of the inquiry in a writ of garnishment is broad enough to impound funds of the debtor, held by the garnishee, even though title thereto stands nominally in a third party")); *see also Wrigley v. First Nat'l Security Corp.*, 104 S.W.3d 259, 264 (Tex. App.—Beaumont 2003, no pet.). In effect, WesTex argues that Jones was the true owner of the account, and that therefore, the Bank had the right to garnish the account, and that Strobach cannot claim that she was damaged by the garnishment. For the reasons set forth below, however, we conclude that a question of fact remains regarding who had true ownership of the funds in Strobach's account.

As a preliminary matter, we agree with WesTex that it is up to the garnishor and the trial court to determine who is the true or equitable owner of an account, and that a garnishee is entitled to rely on the trial court's determination in this regard; therefore, WesTex is correct in contending that a garnishee cannot be held liable for dispersing funds after such a determination is made. *See, e.g., Sunbelt Sav., F.S.B.*, 824 S.W.2d at 558 (recognizing that trial court has the responsibility of determining true ownership of assets, and garnishee bank had no independent duty to determine ownership of its deposits before dispersing funds in accordance with the trial court's garnishment judgment). However, as even WesTex appears to recognize, the problem with this argument is that the Bank never asked the trial court to determine who had true ownership of Strobach's account, and the Bank did not seek the writ of garnishment on the theory that Jones was the true or equitable owner of the account; instead, the Bank's writ of garnishment was based solely on the representation that Strobach was a judgment-debtor in the underlying suit, and that it therefore had the right to garnish her account.

Further, contrary to WesTex's argument, the summary judgment evidence did not

27

conclusively establish that Jones had true ownership of the account. While it is true that Strobach acknowledged in her deposition that her father made frequent deposits and withdrawals from her account, and that her activities with respect to the account were minimal, she also presented testimony at her deposition and in the form of an affidavit, that her father intended to gift the money that he had deposited in the account to her as a means of helping her with her living expenses. Thus, if the Bank had in fact proceeded on a theory that the funds in Strobach's account belonged to Jones, Strobach would have been entitled to dispute that theory, and would have been entitled to a trial of that issue before the funds were garnished from her account to satisfy Jones' debt. *See generally* TEX. R. CIV. P. 668, 674 (where garnishee's answer is controverted, the issue shall be tried as in other cases); *see also Nat'l City Bank.,* 353 S.W.3d at 584–85; *Putman & Putman, Inc.,* 775 S.W.2d at 463; *see also Aycock,* 510 S.W.3d at 638. Given that the Bank neither proceeded on this theory, nor was it adjudicated, it cannot serve as a basis for justifying the garnishment, or for concluding that Strobach was not damaged by WesTex's release of the funds in her account.

For the reasons set forth above, we therefore conclude that questions of fact exist regarding whether WesTex breached its duty of ordinary care in releasing the funds in Strobach's account to the Bank in response to the void Garnishment Judgment, and whether she was damaged thereby. Accordingly, we hold that the trial court erred in granting summary judgment on Strobach's cause of action for breach of contract.

## 2. THE CLAIM FOR NEGLIGENCE AND THE ECONOMIC LOSS RULE

The elements of a negligence claim are the existence of: (1) a duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *See Kroger Co. v. Elwood,* 197 S.W.3d

28

793, 794 (Tex. 2006) (per curiam). The threshold issue in any negligence case is whether the defendant owed a duty to the plaintiff. *See Pagayon v. Exxon Mobil Corp.,* 536 S.W.3d 499, 503 (Tex. 2017) (citing *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990)); *Aguilar v. Morales*, 545 S.W.3d 670, 680 (Tex. App.—El Paso 2017, pet. denied). In the present case, Strobach's claim for negligence is virtually identical to her claim for breach of contract, as it is based on the same course of conduct and the same allegations regarding WesTex's breach of its duty of ordinary care in releasing the funds in her account to the Bank without conducting an adequate investigation to determine whether the Bank had a right to those funds.

Under the economic loss rule, if a plaintiff only seeks to recover against a defendant for the loss or damage pertaining to the subject matter of a contract, he cannot maintain a tort action against the defendant based on the same course of conduct. *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494-95 (Tex. 1991) (recognizing that the source of the duty and the nature of the wrong should be examined to determine whether the underlying claim is in tort or contract). Simply stated, under the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim. *Sterling Chemicals, Inc.*, 259 S.W.3d at 796 (citing *Trans–Gulf Corp. v. Performance Aircraft Servs., Inc.,* 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.)); *see also LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 238 (Tex. 2014) (recognizing that the "law has long limited the recovery of purely economic damages in an action for negligence," where the economic loss was caused by negligence in the performance of a contract between the parties). Thus, when a plaintiff claims economic loss due to the defendant's negligent performance of services under a

29

contract between the two of them, with limited exceptions not relevant herein, the plaintiff's cause of action sounds solely in contract, and not in negligence. *LAN/STV*, 435 S.W.3d at 245; *see also Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61–62 (Tex. 2008) (where plaintiff building owner contracted with roofing company to re-roof its building, its negligence claim against roofing-materials supplier was barred by economic-loss rule where only injury was to defective roof itself, which was "the subject of a contract" between owner and roofing company); *see also JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II,* 508 S.W.3d 391, 421 (Tex. App.— Fort Worth 2014, no pet.) (citing *DeLanney,* 809 S.W.2d at 494 (if the only duty between parties arises from a contract, a breach of this duty ordinarily sounds only in contract, not in tort); *but see Chapman Custom Homes, Inc. v. Dallas Plumbing Co*., 445 S.W.3d 716, 718 (Tex. 2014) (recognizing that where a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit) (citing *LAN/STV,* 435 S.W.3d at 242–43 (discussing the limitations on recovery of purely economic damages by contractual strangers)).

As set forth above, Strobach's claim for breach of contract involves the same allegations as does her claim for negligence, *i.e*, that WesTex failed to use ordinary care in dispersing the funds from Strobach's account, without first verifying the Bank's entitlement to those funds. As such, we conclude that Strobach's claim sounds in contract, rather than in negligence. Accordingly, we conclude that the trial court properly granted summary judgment on Strobach's claim of negligence.

### 3. THE FRAUD CLAIM

We next consider Strobach's fraud claim against WesTex. The law recognizes two types

of common law fraud claims, those for actual fraud and those for constructive fraud. *In re Estate of Kuykendall,* 206 S.W.3d 766, 770–71 (Tex. App.—Texarkana 2006, no pet.) (citing *Chien v. Chen,* 759 S.W.2d 484, 494–95 (Tex. App.—Austin 1988, no writ)). The elements of a claim for actual fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex. 2011) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)); *see also Sprick v. Sprick*, 25 S.W.3d 7, 15 (Tex. App.—El Paso 1999, pet. denied) (citing *Stone v. Lawyers Title Insurance Corp.,* 554 S.W.2d 183, 185 (Tex. 1977)). A claim for actual fraud therefore involves dishonesty of purpose or intent to deceive. *See Strobach*, 487 S.W.3d at 730 (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986); *see also Sprick,* 25 S.W.3d at 15.

On the other hand, in a claim for constructive fraud, the actor's intent is irrelevant. *Kuykendall,* 206 S.W.3d at 770–71 (citing *Sprick,* 25 S.W.3d at 15); *see also Chien,* 759 S.W.2d at 495 (citing *Archer v. Griffith,* 390 S.W.2d 735 (Tex. 1965)). Instead, constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Strobach*, 487 S.W.3d at 730 (citing *Castleberry*, 721 S.W.2d at 273). As this Court has recognized, constructive fraud occurs when a party violates a fiduciary duty or breaches a confidential relationship. *Holland v. Thompson,* 338 S.W.3d 586, 598 (Tex. App.—El Paso 2010,

31

pet. denied) (citing *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied); *see also In re Estate of Kuykendall*, 206 S.W.3d at 770–71.

Strobach's claim for fraud is not well-formulated given that she does not specify in her petition whether her claim is based on actual fraud or constructive fraud, or perhaps both. We conclude, however, that there is no evidence in the record to support a claim for either type of fraud.

In general, Strobach's fraud claim appears to center on the false representations that the Bank representatives made during the garnishment proceedings, and although she acknowledges that it was the Bank, and not WesTex, that made the representations, she appears to believe that by signing the Agreed Garnishment Judgment in which the false representations were made, WesTex in effect joined in those misrepresentations. As WesTex points out, however, WesTex did not vouch for the accuracy of the Bank's representations when it entered the Agreed Garnishment Judgment, nor did it expressly state that it was joining in those representations. More importantly, we find it significant that there is no evidence in the record to suggest that WesTex knew the Bank's representations were false or that it otherwise acted with any wrongful intent when it joined in the Agreed Garnishment Judgment. As such, we find no evidence in the record to support a finding that WesTex had the requisite intent to be found liable for actual fraud.

In her reply brief, however, Strobach contends that she did not intend to bring a claim for actual fraud, and that her claim is instead based on a theory of "constructive fraud," pointing out that constructive fraud does not require evidence of a wrongful intent. While Strobach is correct that constructive fraud does not require evidence of wrongful intent, as set forth above, it

32

nevertheless requires evidence that the defendant breached some legal or equitable duty in order to support a finding of liability, and in particular, that the defendant breached a duty imposed on it due to either a fiduciary or a confidential relationship. *Holland,* 338 S.W.3d at 598. While the existence of a duty is generally a question of fact, if there is no evidence to establish the requisite relationship giving rise to a duty, the matter becomes a question of law. *Martinez v. Sec. State Bank of Pecos*, No. 08-00-00257-CV, 2001 WL 842090, at *4–5 (Tex. App.—El Paso July 26, 2001, no pet.) (not designated for publication) (citing *Crim Truck & Tractor Co. v. Navistar International Transportation Corp.,* 823 S.W.2d 591, 594 (Tex. 1992)); *see also Salas v. Total Air Services, LLC,* 550 S.W.3d 683, 689–90 (Tex. App.—El Paso 2018, no pet.) (recognizing that where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court) (citing *National Medical Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 147 (Tex. 1996) (quoting *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 787 (Tex. App.—Dallas 1990), *writ refused per curiam,* 803 S.W.2d 265 (Tex. 1991)). In the present case, we conclude as a matter of law, that Strobach and the Bank did not have a special or fiduciary relationship.

Numerous courts, including this one, have concluded that in an ordinary banking relationship in which a customer has done no more than deposit funds with a financial institution, neither a fiduciary or confidential relationship has been created. *See Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 410 (Tex. App.—El Paso 2004, no pet.); *Crutcher v. Cont'l Nat. Bank,* 884 S.W.2d 884, 886 (Tex. App.—El Paso 1994, writ denied); *see also Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962) (as a general rule, the relationship between a bank and its customers does not create a special or fiduciary relationship); *Manufacturers'*

33

*Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ). To the contrary, a special or fiduciary relationship may only be found where there is evidence that the financial institution exercised "excessive lender control" over a borrower's business activities. *See, e.g.*, *Greater S.W. Office Park, Ltd. v. Texas Commerce Bank Nat'l Ass'n,* 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist.] 1990, writ denied), *superseded by statute*, TEX.PROP.CODE ANN. § 51.003, as recognized in *Resolution Trust Corp. v. Westridge Court Joint Venture*, 815 S.W.2d 327, 331 (1991) (special relationship could be found if a bank, as lender, exercised excessive lender control over, or influence in, the borrower's business activities.); *see also Wil-Roye Inv. Co. II*, 142 S.W.3d at 410 (where there was no evidence that a financial institution had excessive control over or influence in plaintiff's business activities, and that instead, the parties had an ordinary banking relationship, the trial court properly found that no special relationship existed, as a matter of law) (citing *Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ)).

Strobach contends that WesTex exercised excessive control over her account—thereby creating a special or fiduciary relationship—when it agreed to the patently wrongful garnishment and dispersed the funds in her account to the Bank without first notifying her or getting her permission. We conclude, however, that WesTex's after-the-fact conduct during the garnishment proceedings is not the type of on-going excessive control over Strobach's account activities that would give rise to a finding of a special or fiduciary relationship under the above authorities. To the contrary, there is nothing in the record to suggest that WesTex exercised any excessive control over Strobach's account prior to the initiation of the garnishment proceedings, and/or to suggest that her relationship with WesTex was anything other than an ordinary banking relationship during

the four years prior to that time.

We therefore conclude that Strobach has failed to come forward with even a scintilla of evidence to support her claim for either actual or constructive fraud, and that the trial court properly granted summary judgment in WesTex's favor on Strobach's fraud claim.

### 4. THE DTPA CLAIM

And finally, we consider Strobach's fourth and final claim against WesTex, her DTPA claim. In general, the DTPA provides a remedy for consumers who have been damaged by the deceptive and/or unconscionable actions at the hands of defendant who provided the plaintiff with goods or services. *See Lon Smith & Associates, Inc. v. Key*, 527 S.W.3d 604, 623 (Tex. App.—Fort Worth 2017, pet. denied) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a)(3)). In order to sustain a claim under the DTPA, the plaintiff must first establish that he was a consumer under the statutory definition of that term. *Canfield v. Bank One, Texas, N.A.*, 51 S.W.3d 828, 838 (Tex. App.—Texarkana 2001, pet. denied) (citing *Kennedy v. Sale,* 689 S.W.2d 890, 892–93 (Tex. 1985). The Act defines a "consumer" as, among others, an individual "who seeks or acquires by purchase or lease, any goods or services[.]" *See* TEX. BUS. & COM. CODE ANN. § 17.45(4).

The plaintiff must also establish that the defendant committed, among other things, a "false, misleading, or deceptive act or practice," which was relied on by a consumer to the consumer's detriment, or that the defendant committed an "unconscionable action or course of action[.]" *Id.* § 17.50(a)(1) and (3). The Act defines an "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5); *see also Yates Bros. Motor Co., Inc. v. Watson*, 548 S.W.3d 662, 671 (Tex. App.—Texarkana 2018, no pet.)

35

(citing *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998))). Further, as other courts have noted, the term "grossly," as used in the Act, should be given its ordinary meaning, and therefore, the resulting unfairness must be "glaringly noticeable, flagrant, complete and unmitigated." *See Yates Bros Motor Co., Inc.,* 548 S.W.3d at 671*; Key*, 527 S.W.3d at 623; *see also Morris*, 981 S.W.2d at 677; *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985). Unconscionability under the DTPA is an "objective standard for which scienter is irrelevant." *See Yates Bros Motor Co., Inc.,* 548 S.W.3d at 671; *see also Key*, 527 S.W.3d at 623 (citing *Koonce*, 700 S.W.2d at 583).

Strobach contends that she is a consumer for purposes of the DTPA, and WesTex does not disagree; we therefore assume for purposes of this appeal that Strobach did in fact have status as a consumer in light of the services that the Bank provided to her. *Farmers & Merchants State Bank of Krum v. Ferguson,* 605 S.W.2d 320, 324 (Tex. App.—Fort Worth 1980), *modified,* 617 S.W.2d 918 (Tex. 1981) (recognizing that in Texas, when a depositor pays service fees and the bank in return agrees to honor the checks of its depositor, the depositor is a "consumer" of banking "services" within the meaning of the DTPA); *see also Canfield*, 51 S.W.3d at 838 (citing *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 564 (Tex. 1984)); *Plaza Nat. Bank v. Walker*, 767 S.W.2d 276, 278 (Tex. App.—Beaumont 1989, writ denied). What is in dispute is whether Strobach came forward with evidence to support a finding that WesTex engaged in any conduct that could be considered actionable under the DTPA during the course of the garnishment proceeding. Although her argument is not clearly delineated, Strobach's claim appears to center on the allegation that WesTex's conduct in allowing her funds to be dispersed to the Bank, without first determining the Bank's right to the funds, was "false, misleading, or deceptive" and/or

36

"unconscionable" under the DTPA.

We note, however, that there is nothing in the record to suggest that WesTex made any false, misleading and/or deceptive statements to either Strobach or the trial court during the garnishment proceedings; instead, as explained above, it was the Bank that made the allegedly fraudulent and misleading statements to the trial court that led to the garnishment of her account. Further, we find nothing in the record to support a finding that WesTex's conduct could be considered "unconscionable" under the DTPA. Moreover, we find no evidence that WesTex engaged in any action that took advantage of Strobach's "lack of knowledge, ability, experience, or capacity" during the garnishment proceedings, or that it otherwise engaged in any collusive conduct. Instead, as set forth above, the summary judgment evidence established, at most, that WesTex simply failed to exercise "ordinary care" in releasing the funds in Strobach's account, as required by the parties' account agreement. Accordingly, we conclude that the trial court properly granted summary judgment in WesTex's favor on Strobach's DTPA claim.

## CONCLUSION

We conclude that the summary judgment evidence created a question of fact on the issue of whether WesTex breached the account agreement that it entered with Strobach, and whether Strobach was damaged by that breach; we therefore conclude that the trial court erred in granting summary judgment on Strobach's cause of action for breach of contract. However, for the reasons set forth above, we conclude that the trial court properly granted summary judgment on Strobach's other three causes of action for negligence, fraud and violations of the DTPA. Accordingly, we affirm that portion of the trial court's judgment granting summary judgment as to Strobach's claims of negligence, fraud and violations of the DTPA, and reverse that portion that grants

37

summary judgment for breach of contract and remand this case to the trial court for further proceedings in accordance with our opinion.


GINA M. PALAFOX, Justice

August 14, 2019

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment